## FLETCHER V. GREAT WESTERN ELEVATOR COMPANY.

1. A warehouseman, whose agent fraudulently issues a receipt for grain, which has not been received, is estopped to deny that the grain mentioned in the receipt has been received, as against a *bona fide* holder for value.

2. A statute prohibiting 'a warehouseman from issuing a receipt for goods not actually received will not allow him to prove, in an action by a *bona fide* holder for value, that a receipt fraudulently issued by his agent for grain not received is false, and that the grain mentioned therein never existed.

3. In an action by a *bona fide* holder for value to recover on a warehouse receipt fraudulently issued by the warehouseman's agent, it is proper to limit the recovery to the amount paid for the receipt.

(Opinion filed March 2, 1900.)

Appeal from circuit court, Codington county. Hon. J. O. ANDREWS and Hon. A. W. CAMPBELL, Judges.

Action by H. S. Fletcher against the Great Western Elevator Company on a warehouse receipt.

From a judgment for plaintiff, and from an order overruling a motion for a new trial, defendant appeals. Affirmed.

*Van Fossen & Frost, C. X. Seward* and *Lee Stover*, for appellant.

With respect to the right to go behind the recitals in a grain warehouse receipt purporting to acknowledge the receipt of certain wheat, with a view to showing that such wheat was never in fact delivered to the warehouseman issuing the receipt, the latter stand on the same legal footing and are governed by the same legal rules as are bills of lading issued by carriers. Hughes v. Starley,. 45 Ia. 462; Johnson v. Brown, 27 Ia. 200;

Steward v. Ins. Co, 9 Lea, 104; Hale v. Dock Company, 29 Wis. 486.

Irrespective of statutory provisions affecting this question, it is open to the warehouseman at any time, to show that the grain represented by an outstanding warehouse receipt was never in fact delivered even when such warehouse receipt is in the hands of a purchaser for value thereof. 4 Am. & Eng. Enc. of Law, 2nd ed. 533; Grant v. Norway. 10 C. B. 1065; Brown v. Coal Co., L. R. C. B. 562; Erb v. Railroad. 5 Can. Sup. Ct. 179; Pollard v. Vinton, 105 U. S. 7; Bank v. Railroad, 44 Minn. 222; Dean v. King, 22 O. St. 118; Lears v. Wingate, 3 Allen, 103; Robinson v. Railroad, 9 Fed. 129; Shaw v. Railroad, 101 U. S. 557; Bank v. Winchester, 8 Allen, 109; Fridleander v. Railroad, 130 U. S., 423; Burton v. Coryea, 89 Am. Dec. 388; Jones, Pledges § 246.

The provisions of the warehouse receipts in controversy declaring that they are negotiable, only gives to such receipts the attributes of negotiable paper to a limited extent; namely, to permit the passing of title to the property represented by these warehouse receipts by the mere transfer or indorsement of the instruments themselves. Maybee v. Tregert, 47 Mich. 495; Shaw v. Railroad, 101 U. S. 557, Railroad v. Wilkins, 44 Md. 11; Tiedman v. Knox, 53 Md. 612; Bank v. Boyer, 78 Ky. 42; Bank v. McCrea, 106 Ill. 281.

Section 17, Chapter 99. Laws 1890, does not estop a warehouseman from showing that the grain represented by a warehouse receipt, issued fraudulently by one of his agents has never in fact been received. Kensey v. Leggett, 71 N. Y. 387; Bank v. Bank, 60 N. Y. 40; Howland v. Woodruff, 60 N. Y. 73; Bank v. Shaw, 61 N. Y. 283; Lowell v. Hill, 4 Den. 323; Bank

v. Logan, 368.    The provisions of Section 17, Chap. 99, Laws
1890, apply only to warehouse receipts issued under Section 1
of that act.    Bank v. Newbury, 10 N. Y. 390; Fisher v. Blight,
2 Cranch, 399; Lancaster Co. v. Fry, 128 Pa. St. 599.   Section 17
of the act must be so construed as to give proper force and ef-
fect to Sections 8 and 19 of the same act, which provide that no
warehouse receipts shall be issued in any event except upon
actual delivery of the grain.    Dean v. Driggs, 44 Hun, 482;
Cochran, v. Ripey, 13 Bush. 495; Jones, Pledges, §§ 314, 315;
Bank v. Water Co. 58 Mo. App. 532; Bank v. Railroad, 69 Mo.
App. 253; The Idaho, 93 U. S. 575; Farmer v. Gregory, 78 Ky.
475; Sexton v. Graham, 53 Ia. 181; McComber v. Spader, 1
Hun. 93,

M. E. Sheldon, for respondent.

A warehouseman is estopped by his statement in his re-
ceipt to deny that he has the property actually in his posses-
sion, in an action by a holder of such receipt who has purchas-
ed it for value without notice of any defect.     McNeil v. Hill, 1
Woodw. 96; Goodwin v. Scannell, 6 Cal., 541; Adams v. Gor-
ham, 6 Cal. 68; Griswold v. Haven, 25 N. Y. 595; Babcock v.
Bank, 118 Ind. 212; Planters Rice Mill Co. v. Bank, 78 Ga. 574;
Planters Rice Mill Co. v. Olmsted, 78 Ga. 586; Whitlock v.
Hay, 58 N. Y., 487; Rowley v. Biglow, 12 Pick. (Mass.) 307;
Armour v. Railroad, 65 N. Y. 111; Van Santen v. Standard Oil
Co., 81 N. Y. 171; Brooks v. Railroad, 108 Pa. St. 529; Covent-
ry v. Railroad, 11 Q. B. Div. 776; St. Louis Cotton Compress
Co., 11 Mo. App. 333; Evans Agency 594, 606; Adams Express
Co. v. Schlessinger, 75 Pa. St. 246; Witchita Sav. Bank v.
Atchison, etc. R. Co., 20 Kas. 519; Railroad v. Bank; 10 Neb.
556, 35 Am. Rep. 488; Batavia Bank v. Railroad, 106 N. Y. 195,

60 Am. Rep. 440; Railroad v. Larned, 103 Ill. 293; Stone v. Railroad, 9 Ill. App. 48; Tibbits v. Railroad, 49 Ill. App. 567.

Fuller, P. J. This appeal is from an order overruling a motion to set aside a verdict for $215.90, and grant a new trial, in an action based upon the following warehouse receipt, indorsed by William Dixon, and of which respondent, Fletcher, is the owner: "Great Western Elevator Company. No 1,524. Oct. 14, 1895. Received in store of William Dixon by this elevator company, at Gardner, So. Dak., five hundred $^{00}|_{00}$ cleaned wheat, grade No. 1°. Which grain in kind and grade, we agree to deliver at this warehouse to the original holder of this receipt; but, in case of the transfer of this receipt to another party, we shall have the option to deliver the grain or pay the market price thereof on the day of surrender of this receipt; all subject to the payment as follows: 1st. Storage for the first fifteen days 2½ cents per bushel, which includes all charges for receiving, handling, insuring, and delivering. 2nd. Storage after first fifteen days ½ cent per bushel for each fifteen days, or part thereof; but shall not exceed 5 cents for six months. 3rd. If purchased by us, no charge will be made for the first fifteen days, nor for receiving, handling, or insuring. 4th. Said grain to be insured by us for benefit of owners. 5th. The grain is held at owners' risk, or loss, or damage from riots, acts of God, or owners' own acts. 6th. No charge shall be made for cleaning, and, if uncleaned wheat is delivered out on this ticket, proper dockage shall be added to the wheat so delivered. 7th. This receipt negotiable, except as against the owners of any chattel mortgage in force on said grain. 510 bush. 00 lbs. gross. 10 bush. 00 lbs. dockage. 500 bush. 00 lbs.

net [Signed] Geo. Dixon, Agent." The record sufficiently shows that appellant corporation, at the time of issuing the foregoing instrument, was operating numerous grain warehouses within this state, including one at the village of Gardner; and that George W. Dixon was its agent at that place, having authority to issue warehouse receipts for grain actually delivered to his principal at that station. None of the wheat mentioned was ever received in store, and the issuing of the receipt was a fraud on the part of appellant's agent, George W. Dixon, who appears to have procured the indorsement of his father, William Dixon, upon the back thereof, and for a valuable consideration transferred the same to Mr. Dewey, from whom respondent, without any knowledge of the fraud, purchased the instrument, paying therefor its full value in cash. In determining whether appellant is liable for this fraud practiced by George W. Dixon, it must constantly be borne in mind that every transaction of a corporation must be done by its agents, and consequently a corporation is answerable for the acts of its authorized agents in the due course of business, the same as if done by natural persons on their own behalf. The public, having nothing to do with the appointment or superintendency of these agents, should not be held responsible for their honesty; and, in order to make it safe to deal at all with them, the corporation should be deemed guarantors of all their acts within the general scope of the power conferred. "The ruling principle therefor is," says Judge THOMPSON, "that an agent of a corporation, clothed with certain power by the charter, governing statute, or lawful acts of the corporation, may use that power for an unauthorized, or even a prohibited, purpose in his dealings with an innocent third person, and yet

render the corporation liable for his acts." 4 Thomp. Corp. par. 4932. In Maynard v. Insurance Co., 34 Cal. 48, the court says. "A corporation is liable for acts done by its agents in *delicto* as well as in *contractu* in the course of its business and their employment, and the corporation is responsible therefor as an individual is responsible under similar circumstances." In conformity with reason and obvious justice, the courts apply the foregoing principle to the unauthorized, prohibited, or even unlawful acts of agents dealing with innocent third parties, when the transaction in its nature is within corporate power, and apparently such as the agent is authorized to consumate. Madison & I. R. Co. v. Norwich Sav. Society, 24 Ind. 457; Donaldson v. Railroad Co., 87 Am. Dec. 391; Section 17, c. 99, Laws 1890. A wrongful act within the exercise of a delegated power, such as this record discloses, is not the assumption of authority, but the abuse of it; and, as said by Lord Holt, "where one of two innocent parties must suffer from the fraud of a third, he who reposed trust and confidence in the fraudulent agent ought to bear the loss." So railway corporations are said to be estopped from questioning receipts or bills of lading fraudulently issued and signed by their agents, as against third persons who have given value for them in the belief that they were real, and represented the delivery of property to be shipped or stored by such companies, when in fact the property was never received. Brooke v. Railroad Co., 108 Pa. St. 529, 1 Atl. 206; Wichita Sav. Bank v. Atchison, T. & S. F. R. Co., 20 Kan. 519; Armour v. Railroad Co., 22 Am. Rep. 603; Sioux City & P. R. Co. v. First Nat. Bank, 10 Neb. 556, 7 N. W. 311; Railroad Co. v. Larned, 103 Ill. 293; Bank of Batavia v. New York, L. E. & W. R. Co., 106 N. Y. 195, 12 N. E. 433; Express Co. v. Schlessinger, 75 Pa. St. 246.

The execution of such receipts as that under consideration being within the general scope of the power confided by the corporation to George W. Dixon, as its agent, the same was ostensibly sufficient, and respondent, whose integrity in the matter is unquestioned, had a right to presume that the wheat had been delivered. Appellant is, therefore, estopped by the recital of such instrument to deny that the grain mentioned therein has been received. Mr. Herman defines and states the doctrine applicable to such written instruments thus: "Warehouse receipts are written statements that the party named· in the receipt has deposited or left for storage certain personal property, which the receiptor acknowleges to be in his possession. When a warehouseman issues such a receipt, it puts it in the power of the holder to treat with the public on the faith of it. He enables him to say that he has certain property which he can sell or pledge for a loan of money. If the warehouseman gives to the party who holds such receipt a false credit, he will not be suffered to contradict the statement that he made in the receipt, so as to injure a party who has been misled by it. That is within the most exact definition of estoppel. If A. gives B. a warehouse receipt for articles which he has never received, a third party, treating with B. on the faith of the statement contained in the receipt, will hold A. for the goods, or their value. It is of no consequence what the transaction may be between the original parties, whether the receipt is a security for a loan or entirely false." 2 Herm. Estop. par. 1240. Answering the identical question here presented, the court, in Griswold v. Haven, 25 N. Y. 595, says: "The only elements of an estoppel *in pais* are the assertion of a fact by one party, and such action by the other, in reliance upon the asser-

tion, that he will be injured and virtually defrauded, if the fact asserted is disproved. It would seem difficult to imagine a case more directly within the doctrine than the present. If the firm is bound at all by the representations of WIGHT, it would seem, upon principle, that it must be estopped from proving the contrary." Nor does the statute prohibiting a warehouseman from issuing a receipt for goods not actually received in any manner affect such a transaction; nor allow him to prove that a receipt is false, and that the grain mentioned therein never had any existence, where a party has advanced money in good faith upon the representations contained therein,  Dean v. Driggs (N. Y.) 33 N. E. 326, 19 L. R. A. 302; Goodwin v. Scannell, 6 Cal. 541; Babcock v. Bank, 118 Ind. 212, 20 N. E. 732; Hale v. Dock Co., 29 Wis. 482; Planters' Rice Mill Co. v. Southern Bank of Georgia, 78 Ga. 574, 3 S. E. 327; Same v. Olmstead, 78 Ga. 586, 3 S. E. 647.

Under the circumstances disclosed by the record there is no merit in the contention that no proper demand was ever made by respondent upon appellant for the wheat, or its value, together with a tender of storage charges; and, as the court did not permit respondent to recover the value of the wheat, but limited him to the amount paid for the ticket, appellant has no just cause to complain concerning the measure of damages. The verdict is fully sustained by competent evidence submitted to the jury for its consideration in the light of instructions which fully and fairly state the law of the case, and a careful examination of the entire record discloses no error. The order appealed from is affirmed.