466 A.2d 620

**Darrell NORTHCRAFT and Ivan Northcraft, t/a Northcraft Brothers**

v.

**EDWARD C. MICHENER ASSOCIATES, INC., t/d/b/a Technical Diversification Services, Appellant.**

Superior Court of Pennsylvania.

Argued March 10, 1983.

Filed Sept. 23, 1983.

Petition for Allowance of Appeal Denied Jan. 16, 1984.

434

Jack M. Hartman, Harrisburg, for appellant.

Wayne C. Parsil, Harrisburg, for appellees.

Before WICKERSHAM, BECK and MONTEMURO, JJ.

MONTEMURO, Judge:

Plaintiff-appellees, Darrell and Ivan Northcraft, brought an action in trespass for conversion against defendant-appellant, Edward C. Michener Associates, Inc., t/d/b/a Technical Diversification Services (hereinafter TDS). Appellees alleged that the appellant converted, by refusal to deliver upon proper demand, parts and plans of an invention of Darrell Northcraft, alleged to be in the possession of the appellants. The jury found in favor of the Northcrafts and awarded them damages in the amount of Ten Thousand, Five Hundred ($10,500.00) Dollars. The appellant's post-verdict motions were denied and the present appeal followed.

Appellant raises two issues herein. First, that the trial judge erred in denying the appellant's post-verdict motions for judgment n.o.v., or for a new trial, because the evidence was insufficient to make out a cause of action for conversion. Second, the appellant contends that the trial court erred in allowing improper evidence regarding damages. Since the plaintiff's cause of action is premised upon a somewhat novel theory, we believe a full recitation of the pertinent facts is in order.

Darrell Northcraft is a mechanic who operates a garage specializing in automobile repairs. He has also been involved in auto racing, specifically the racing of "modified sport cars." His experience with racing led him to invent a device called a two speed quick change differential. This differential would allow race drivers to change the gear ratios between the drive shaft and the rear wheels while on the track without making a pit stop. The device increases the car's efficiency and adaptability to changing track conditions. Northcraft obtained a patent for the device on

February 29, 1972. He then set out to have a prototype of the differential constructed.

In pursuit of this goal, Northcraft met with one Wayne Culver, the head of TDS. TDS was the engineering branch of Edward C. Michener Associates, Inc., which is primarily a company which seeks out new consumer products and attempts to market them. Culver agreed, on behalf of TDS, to construct a prototype of the differential at a cost of $4,150.00. Northcraft also turned over to TDS the patent abstract and several parts which might be used or adapted for use in the differential, including a differential housing and a ring gear and pinion. TDS apparently commenced work on the project in August, 1972.

In January, 1973, the appellant sent a bill to Northcraft for work completed on the project. The accompanying letter read, in part: "As you know, we are waiting for the return of new gears from the vendor. As soon as these come in we can quickly assemble the device and you are ready for testing." Northcraft testified that after reading the letter he "thought that we were almost ready to test the differential ... that we could quickly assemble it, I assumed that most of the parts was [sic] there and he was only waiting for a couple of gears." (N.T. 16–17).[1]

Subsequently, TDS wrote to Northcraft requesting his approval for the expenditure of additional funds; which approval was granted. In April, 1973, TDS sent a letter to Northcraft stating, in part: "Ed is hard at work on the changes that you asked for." This letter was in response to a request by Northcraft for certain technical changes in the "spur gears"; i.e., the use of "needle bearings" instead of "brass bushings." In May, 1973, in a meeting at the offices of TDS, Northcraft was told by Wayne Culver concerning the differential parts that, "[T]hey had not come in, they were in different vendors or manufacturing places."

1. Northcraft testified generally that the differential when finished was comprised of the following parts: "shifter sleeves; spur gears; shifter clutches; shafts, what we call jack shafts, three shafts, there would have had to have been a pinion retainer; shifting tower; shifting fork; cover; ..." (N.T. 17)

Northcraft testified that he never saw any plans for, or components of, the differential. However, he did not think this was unusual because TDS had no design or production facilities on the premises.

In February, 1974, TDS instituted legal proceedings to compel the payment of Northcraft's bill. Northcraft agreed to pay the bill, but wanted to take all parts and drawings that had been completed as of that time and terminate their relationship. Northcraft paid the bill. In all, he paid TDS $6,995.00 for its services. In return, TDS gave to Northcraft two drawings and a ring gear and pinion; all of which had been developed by the Philadelphia Gear Corporation. Additionally, they returned all materials which Northcraft had originally submitted.

Northcraft subsequently had the prototype constructed by another engineer at a cost of $11,559.96. This amount included $2,000.00 paid to the engineer, Michael Kahl, for drafting approximately twenty (20) drawings of different components of the differential. Kahl did not make use of the drawings from TDS. Moreover, the ring gear and pinion obtained from TDS, although used in the prototype, were made from unsuitable materials which wore out quickly and had to be replaced.

The appellant presented the testimony of Wayne Culver, who stated that all materials in the possession of TDS were returned to Northcraft, and that he contacted Philadelphia Gear and requested that they do the same.

The appellant also presented as a witness Edward Koons, who was a staff designer, indeed the only staff designer, employed by TDS. Koons testified that he completed three drawings on the Northcraft differential project. One was a drawing of the "spiral bevel gear" and "spiral bevel pinion" which was sent to Philadelphia. Presumably, this drawing was the basis for, and was later supplanted by, the two drawings and components made by Philadelphia Gear, which were later returned to Northcraft.

The second drawing was a rendition of the "spur gear system" which Koons claimed was sent to the Christiana Machine Company. The third was a drawing of the "clutch mechanism." Koons testified that he also made two preliminary "sketches" of the "shift linkage."

There is no indication of the ultimate fate of the latter two drawings and the preliminary "sketches." Koons left TDS in March or April of 1973 and never saw them again. He testified that they might have been left in a credenza behind his desk, but he was not sure.

The appellant's initial claim is that the evidence was insufficient to establish a cause of action for conversion. It specifically contends that the Northcrafts failed to prove the existence of any property which was capable of being converted. The appellant argues that the only evidence of the existence of plans or parts of the prototype differential was Northcraft's statement that he assumed that they existed.

The Northcrafts, on the other hand, characterize the issue differently. They assert that the existence of the plans and components and the prototype itself was established by circumstantial evidence; i.e., the representations of Wayne Culver and the letters sent by TDS to Northcraft.

The appellant contends that the trial court erred in denying its motion for a new trial. In reviewing the trial court's determination, we look to the following standard:

> Unlike appellate review of the trial court's denial of a motion for judgment n.o.v., in which the evidence must be viewed in the light most favorable to the verdict winner, review of the trial court's denial of a motion for new trial requires that we consider all the evidence. (citations omitted). The grant of a new trial is proper only when the jury's verdict is so contrary to the weight of the evidence as to shock one's sense of justice and make a new trial imperative in order that right may be given another opportunity to prevail. (citations omitted). The trial judge, who is present at the offering of the testimony, has broad discretion with regard to ordering a new

trial, and his decision will not be reversed on appeal. Unless it appears that he has acted capriciously or has palpably abused his discretion. (citations omitted). A new trial should not ordinarily be granted where the evidence is conflicting and the jury could have found for either party.

*Yandrich v. Radic,* 291 Pa.Super. 75, 435 A.2d 226 (1981), appeal dismissed 499 Pa. 271, 453 A.2d 304 (1982).

To determine whether the trial court has abused its discretion, we look to see if "[i]n reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable as shown by the evidence or the record, discretion is then abused and it is the duty of the appellate court to correct the error." *Prescott v. Prescott,* 284 Pa.Super. 430, 426 A.2d 123 (1981); *Commonwealth v. One 1961 Buick Special 4-Door Sedan,* 204 Pa.Super. 293, 295, 204 A.2d 288, 289 (1964); *Adelman v. John McShain, Inc.,* 148 Pa.Super. 138, 24 A.2d 703 (1942).

We conclude after reviewing the record that the Northcrafts have proven that a conversion had taken place; however, we also find a new trial is warranted because the weight of the evidence clearly indicates that the only property actually proven to have been converted were the two drawings by Koons that were not delivered to Northcraft upon demand. Thus, the trial court erred in allowing testimony on the cost of reproducing an entire prototype.

Conversion is an ancient tort, yet it is rarely the basis of a cause of action in modern times. Its prerequisites were set forth by our supreme court in *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964).

A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or interference therewith, without the owner's consent and without lawful justification. *Gottesfeld v. Mechanics and Traders Insurance Co.,* 196 Pa.Super. 109, 115, 173 A.2d 763, 765 (1961). Prosser stated that "conversion is an act of interference with the domain or control over a chattel * * conversion may be committed by: * * * (c) unreasonably

withholding possession from one who has the right to it."
Prosser, Torts § 15 (2d Ed.1955).

See also *Baram v. Farugia,* 606 F.2d 42 (3rd Cir.1979); *Baker v. Rangos,* 229 Pa.Super. 333, 324 A.2d 498 (1974). Restatement (Second) Torts § 222, 222 A. 237 (comment: *f* "[T]he refusal to surrender a chattel upon demand is not a conversion if the person upon whom the demand is made does not have possession of the chattel at the time of demand.")

This definition, although easily stated, is somewhat more difficult in its application. Part of the difficulty stems from the common law roots of conversion. The present tort evolved from the common law action of trover.[2] This evolution has resulted in a relaxation of some of the more stringent requirements of the action. The best example of this is the gradual recognition of various forms of property which are capable of being converted; forms of property which were beyond the scope of common law trover. As stated by one commentator:

> What property may be the subject of an action for conversion was at first determined on the basis of the fiction of losing and finding. Any tangible chattels could be lost and found, and so could be converted.

2.    TROVER. In common-law practice, the action of trover (or trover and conversion) is a species of action on the case, and originally lay for the recovery of damages against a person who had *found* another's goods and wrongfully converted them to his own use. Subsequently the allegation of the loss of the goods by the plaintiff and the finding of them by the defendant was merely fictitious, and the action became the remedy for any wrongful interference with or detention of the goods of another.

> \*    \*    \*    \*    \*    \*

In form a fiction; in substance, a remedy to recover the value of personal chattels *wrongfully* converted by another to his own use.

> \*    \*    \*    \*    \*    \*

A possessory action wherein the plaintiff must show that he has either a general or special property in thing converted and the right of its possession at the time of the alleged conversion.

> \*    \*    \*    \*    \*    \*

And lies only for wrongful appropriation of goods, chattels, or personal property which is specific enough to be identified.
Blacks Law Dictionary (4th Ed.)

. . . .

Intangible rights of all kinds could not be lost and found, and the original rule was that there could be no conversion of such property. But this hoary limitation has been discarded to some extent by all of the courts.

. . . .

The process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with some document. There is prehaps no very valid and essential reason why there might not be conversion of an ordinary debt, the good will of a business, or even an idea, or "any species of personal property which is the subject of public ownership;" but thus far other remedies apparently have been adequate... (Footnotes omitted).

Prosser, Torts § 15, pp. 82–83 (4th ed. 1971). See also *Weiser v. Zeisinger,* 2 Yeates 536 (1800) (action of trover will lie for a deed); *Overton v. Williston,* 31 Pa. 155 (1858) (but not for fixtures); *Neiler & Warren v. Kelley,* 69 Pa. 403 (1871) (action of trover will lie for conversion of stock certificates and bonds, but not for the incorporeal rights they represent); *Mackay, et al., Administrators v. Benjamin Franklin R. & H. Co.,* 288 Pa. 207, 135 A. 613 (1927) (action for conversion will not lie for an idea, *i.e.,* an architect's design). *But see Evans v. American Stores Company,* 3 D. & C.2d 160 (1955) (action permitted for conversion of sports promotion plan); *Benaquista v. Hardesty & Associates,* 20 D. & C.2d 227 (1959) (action permitted for conversion of architectural design).

However, it is not the form of the property alleged to have been converted that is in issue here. The Northcrafts claim that plans, specification, parts and a prototype differential were intentionally withheld by the appellant. Our inquiry must therefore focus on what proof is necessary to establish the existence of the allegedly converted property; not the form it has taken or its identification within a larger quantity of identical property.

Not surprisingly, there is a paucity of authority on this particular subject. Moreover, and again we are not surprised, the existing authorities are in conflict.

In *Farmers State Bank of Knox v. Bowles*, 52 N.D. 553, 203 N.W. 903 (1925), the plaintiff bank brought an action for conversion against a mortgagor. The defendant, Eli Bowles, had executed a chattel mortgage on some personalty (farm implements) to secure a One Thousand, Seven Hundred ($1,700.00) Dollar loan. In answer to the bank's complaint, Bowles denied ever owning or possessing the property described in the complaint. At trial, a verdict was returned in favor of the bank, and Bowles appealed. The appellate court reversed.

The case is remarkable for the similarity of certain of the facts to those in the instant case. As stated by the court:

> Aside from the evidence relating to the statements claimed to have been made by Eli Bowles, and the recitals in the mortgage, no evidence was adduced tending to show that Eli Bowles ever had or possessed any of the property described in the mortgage, or even that the property existed. The cashier of the bank stated that he had never seen the property. The plaintiff rested its case solely on the proposition that the defendant is estopped from denying either the existence of the ownership of the property.

*Id.* at 557, 203 N.W. at 903–904.

The court recognized the general rule that a mortgagor can be estopped from denying ownership of property because of covenants in the mortgage instrument; yet it refused to extend the effect of the estoppel to prove the existence of the property.

> [W]hen stripped of all fiction, the actual basis of plaintiff's case is not that the defendant deprived it of certain property on September 22, 1923, but that on January 9, 1923, he executed and delivered to it a mortgage containing certain false and untrue covenants. There is not the slightest evidence that defendant ... actually converted any of the property in which plaintiff claims a mortgage

interest. On the contrary, whatever proof there is, is to the effect that there was no property to convert, and, hence, no conversion.

*Id.* at 562, 203 N.W. at 905.

The opposite result was obtained in a line of cases commencing with *Griswold v. Haven*, 25 N.Y. 595 (1862). In *Griswold*, the defendant, a partner in a warehouse, represented to the plaintiff that he owned a quantity of grain, which was in storage. He further produced receipts as evidence of the quantity of the grain and its value. The plaintiff purchased the grain based on the receipts and the defendant's representations. The plaintiff demanded the grain and the defendant refused to deliver, whereupon the plaintiff brought an action for conversion against the defendant and his partner in the warehouse.

A verdict was returned for the plaintiff, but a new trial was ordered by the trial judge. The appellate court reversed and ordered that final judgment be entered in the plaintiff's favor. The court held that the defendants were estopped from denying the existence of the grain, finding that all of the elements of *estoppel in pais* had been met. Three judges dissented, concluding that the case was more appropriately an action for breach of promise or for misrepresentation. *Griswold* has been followed by courts of other jurisdictions. *See Fletcher v. Great Western Elevator Co.*, 12 S.D. 643, 82 N.W. 184 (1900); *Citizens State Bank v. Security Bank of Tyndall*, 54 S.D. 233, 222 N.W. 932 (1929); *Coleman v. O'Neil and Pearce*, 26 Minn. 123, 1 N.W. 846 (1879).

We note that the Northcraft's contention is that the representations and letters from Wayne Culver and TDS are circumstantial evidence of the existence of the plans, specifications, parts and prototype differential. They do not specifically contend that the appellant is estopped from denying the existence of the property, either in the court below or herein. However, this does not preclude us from deciding whether estoppel is applicable.

When utilized as a defense, the failure to plead equitable estoppel constitutes a waiver of that defense. Pa.R.C.P. 1030, 1032. However, this court has held that the affirmative use of equitable estoppel is not waived by the failure to raise it in the trial court. *Straup v. Times Herald*, 283 Pa.Super. 58, 423 A.2d 713 (1980). In the present case, consideration of its applicability is proper because the character of the plaintiff's action as stated in his complaint and the evidence at trial are amenable to an estoppel analysis, even if those specific words were never used. *Id.*

Equitable estoppel is a doctrine whereby a party will be bound by his representations if they are justifiably relied upon by another party. As this court has stated:

> Equitable estoppel arises when a party by acts or representation intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts. *Board of Education of School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3 AFT, AFL–CIO*, 40 Pa. Cmwlth. 490, 397 A.2d 1273 (1979); *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 27 A.2d 20 (1942).

*Id.*, 283 Pa.Superior Ct. at 71, 423 A.2d at 720.

Moreover, in determining the role of the court in deciding whether an estoppel has been established, the supreme court has stated:

> Whether an estoppel results from established facts is a question for the determination of the courts: (cases cited). It is for the jury to say whether alleged remarks were made, but it is for the court to decide whether they are susceptible of inferences attributed to them. That statements should give rise to an estoppel they must be clear and reasonably certain in their intendment. *General Electric Co. v. N.K. Ovalle, Inc.*, 335 Pa. 439, 445, 6 A.2d 835, 838 (1939).

*Nesbitt v. Erie Coach Company,* 416 Pa. 89, 96, 204 A.2d 473, 476 (1964). *See also Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983); *Bollinger v. Palmerton Area Communities Endeavor, Inc.,* 241 Pa.Super. 341, 361 A.2d 676 (1976). "[T]he burden on the party asserting the estoppel to establish the estoppel by clear, precise and unequivocal evidence." *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975); *Funds for Growth, Inc. v. Maraldo,* 443 Pa. 281, 288, 278 A.2d 922, 926 (1971); *Ham v. Gouge,* 214 Pa.Super. 423, 428, 257 A.2d 650, 653 (1969).

We conclude that the Northcrafts have failed to sustain the burden of proving an estoppel. Granting, of course, that the representations were made by Wayne Culver and the letters sent by TDS, these still are not the "clear, precise and unequivocal evidence" contemplated by our supreme court as justifying unquestioned reliance on the part of Northcraft. To the contrary, the evidence demonstrates that the representations and letters are vague and ambiguous. No specific components, nor specific vendors were ever mentioned. No specific timetable, nor progress reports were given. The representations are just general statements that work is progressing on bills for work completed thus far. Even the statement in the letter of January, 1973 [3] is ambiguous. Does "device" mean the entire prototype, or merely the ring and pinion assembly?

While the Northcraft's may have relied on these representations and assumed that work on the prototype was progressing rapidly, their reliance was more optimistic than pragmatic given the ambiguous nature of those representations.

Even if the Northcrafts were able to sustain the burden of proof, we are disinclined to accept estoppel as a means of establishing the existence of allegedly converted property. The line of cases in which the estoppel theory is so used

**3.** The statements, previously quoted, read: "As soon as these [new gears] come in, we can quickly assemble the device and you are ready for testing."

concerns the sale of goods. The evidence relied upon to establish the estoppel was either receipts describing the goods, or the representations of the vendor, or both. An underlying rationale of the cases is the preservation of commercial transactions.

The situation herein is distinguishable. There is no question of the sale of goods, but rather a contract to *create* or *manufacture* a tangible, working prototype from an idea set forth in a patent abstract. At the outset of the contract the Northcrafts knew that the prototype was not in existence. Thus, a greater presumption exists that the property is not in existence until proven otherwise.

Perhaps an illustration is in order to clarify the principle involved. A philantropist and patron of the arts, X, commissions the well known artist, Y, to paint his favorite landscape. Y agrees to do so for a fee of $4,000.00, but tells X it will take some time since he is an artist and requires special oil paints from Italy and special canvasses from Syria.

A few months go by and X receives a letter from Y, saying, "I am waiting for the special brushes from Japan. As soon as they arrive, I will complete the detail work and the painting will be finished." X assumes that this means he will have the landscape soon.

A few more months go by and X receives a bill from Y "for work completed so far on landscape," calling for an additional $2,000.00 over and above the original $4,000.00. X, somewhat discontentedly agrees to pay the bill, but insists that Y discontinue his work and return all sketches, paints, canvasses, and as much of the frame as has been completed.

In response, Y sends to X a pencil sketch on the back of a napkin and two sections of the gilded frame that was to enclose the landscape. Y asserts that this is all of the work that he has done. A member of Y's studio later tells X that he himself did three perspectives of the landscape, but that

he does not know where they are. X then commissions Z to paint the landscape for $12,000.00.

▪ Can X bring an action for conversion? Yes, but only for the three perspectives drawn by the member of Y's studio; not for the completed landscape. To allow an action for conversion of the landscape itself would be an expansion of the concept of conversion in a new and uncharted direction. A tort based on interference with an individual's property right in a chattel, regardless of the nature of the chattel, presupposes the existence of that chattel. The action must therefore be limited to chattels of an existing nature; *i.e.* those whose existence is ascertainable by some concrete proof. It seems that the present circumstances are more amenable to a cause of action for breach of contract or for misrepresentation.

▪ This last concept leads us back to the consideration of the Northcraft's basic contention that the existence of the plans, sketches, parts and the prototype differential was established by circumstantial evidence. We must disagree. While there is no doubt that circumstantial evidence is admissible and even sufficient to prove an element of a cause of action, *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A.2d 477 (1959), there is a level of such evidence required to sustain the party's burden of proof. "For one offering only circumstantial evidence to prevail, the evidence must so preponderate in favor of the offeror's conclusion that it outweighs any other evidence and reasonable inferences therefrom which are inconsistent therewith." *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 387, 278 A.2d 908, 911 (1971); *Quirk v. Girard Trust Bank*, 232 Pa.Super. 356, 331 A.2d 781 (1974).

▪ The Northcraft's relied solely on the representations of the appellants, and his own assumptions regarding those representations to establish the existence of the converted prototype. We find, as a matter of law, that this evidence is insufficient. Darrell Northcraft also testified that he

never saw anything other than what the appellant returned to him. The totality of the appellant's evidence indicates that all materials, save the sketches prepared by Koons, were returned to the Northcrafts. As a whole, the evidence leads to a conclusion that the only property in existence, and thus the only property able to be converted, were the sketches.

Appellant's second contention is that the trial court erred in allowing improper evidence on the issue of damages. The Northcrafts introduced evidence of the cost of producing the entire prototype that was constructed under the direction of engineer, Michael Kahl. We agree.

The measure of damages in an action for conversion is the market value of the converted property at the time and place of conversion. *Diesel v. Caputo*, 244 Pa.Super. 195, 366 A.2d 1259 (1976); *Berry v. Heinel Motors*, 162 Pa.Super. 52, 56 A.2d 374 (1948). The evidence relating to the cost of reproducing the entire prototype was therefore irrelevant and prejudicial and requires the grant of a new trial. Consequently, we reverse the order of the lower court and remand the case for a new trial. Because the jury concluded that a conversion had indeed taken place, but was misled by the improper evidence on damages, it is only necessary that the new trial be solely on the issue of damages. A new trial may be awarded solely on the issue of damages if (1) the issue of liability has been fairly determined, and (2) the question of damages is readily separable from the issue of liability. *Troncatti v. Smerecz- niak*, 428 Pa. 7, 235 A.2d 345 (1967); *McIntyre v. Clark*, 314 Pa.Super. 552, 461 A.2d 295 (1983); *Reid v. Oxendine*, 275 Pa.Super. 548, 419 A.2d 36 (1980); *Lininger v. Kromer*, 238 Pa.Super. 259, 358 A.2d 89 (1976); *Lambert v. PBI Industries*, 244 Pa.Super. 118, 366 A.2d 944 (1976).

Reversed and remanded. This court does not retain jurisdiction.