PESTCO, INC., and Surco Products, Inc., Appellees

v.

ASSOCIATED PRODUCTS, INC., Ralph J. Jackson Simons, Harlan Simons, III, Mark Funderlich, Watkins Motor Lines, Inc., and William Coates.

Appeal of: Associated Products, Inc., Harlan Simons and Mark Funderlich

Superior Court of Pennsylvania.

Argued Jan. 13, 2005.

Filed July 29, 2005.

Alan S. Miller, Pittsburgh, for appellants.

Howard A. Chajson, Pittsburgh, for appellees.

BEFORE: FORD ELLIOTT, ORIE MELVIN and TAMILIA, JJ.

OPINION BY TAMILIA J.:

¶ 1 Associated Products, Inc. (API), API president Harlan Simons III and chemist Mark Funderlich appeal from judgment entered against them on January 21, 2003 in the amount of $25,000 in punitive damages and $1.00 compensatory damages. They further appeal the Order granting appellees permanent injunctive relief and enjoining appellants from future trespass upon and/or misappropriation of appellee's bills of lading, packing documents, invoices, other shipping documents and shipped products. Judgment was entered after the court denied appellants' motion for post-trial relief following a non-jury verdict in favor of appellee Pestco, Inc.[1] After careful review and consideration, we affirm in part and vacate in part.

¶ 2 The trial court set forth the relevant facts as follows:

> Plaintiff Pestco, its division Air–Scent, and its sister company Surco are involved in the business of manufacturing

---

1. Appellee Surco, Inc., Pestco's sister company, was removed as a party to this action pursuant to a December 23, 2002 clarifying Order. Record, No. 118.

and selling deodorizing air fresheners and accessories to companies that install the products in public restrooms. Plaintiff companies are owned by Arnold Zlotnick. Defendant Associated Products, Inc. also sold restroom deodorizers and air fresheners. Defendant Ralph Simons is President of Associated Products. Defendant Harlan Simons, III was just below Ralph Simons in the company hierarchy. Defendant Mark Funderlich worked for Associated Products as a chemist.

Both Pestco and Associated Products employed Defendant Watkins Motor Lines, Inc. trucks to deliver shipments from both companies to their customers. Defendant William Coates was employed by Watkins as a truck driver. For shipping, the boxes of product are loaded by the selling company on pallets and bound by clear shrink wrap. On several occasions, with regard to the Associated Product's shipments, both Marc Funderlich and Harlan Simons III assisted the truck driver in loading the boxes on the truck, as did several Pestco employees with respect to Pestco's shipments.

Typically, each truck shipment contained a "bill of lading" which included certain information such as the shipping party, the number of cartons, customer's name, customer's address, sometimes the customer's phone number, quantities and types of product being shipped. [Trial Transcript, 2/15/01, p. 158–159, testimony of Arnold Zlotnik]. A domestic shipment contains, in addition to the bill of lading, a packing slip and a material safety data sheet (MSDS).

In addition, Air Scent also shipped its products internationally to a company known as Naturex located in Canada. Plaintiffs used the trucking company, JAGA, in connection with the shipments. An international shipment contains all of the above documents, as well as a customs invoice, customs papers, and a certificate of origin.

Following an unusual anonymous phone call to its offices and the return of some damaged shipments, Pestco undertook an investigation. Pestco concluded that Defendant Coates had revealed confidential information from certain bills of lading to principals and employees at Associated Products, a primary competitor. At trial, Defendant Coates testified that, on five to seven separate occasions, over a period of one and a half to two and a half years, he would show the bills of lading for Pestco/Air–Scent/Surco products to Defendant Mark Funderlich. [Trial Transcript, 2/13/01, pp. 335–36] and once or twice to Defendant Harlan Simons. Harlan Simons testified that he twice looked at a Pestco bill of lading shown to him by Mr. Coates. [Trial Transcript, 2/20, pp. 499–500]. Defendant Mark Funderlich testified that he was shown such bills of lading on three occasions and that he showed them to Harlan Simons. [Trial Transcript, 2/15/01, p. 17]. Other witnesses tend to corroborate, either directly or through circumstantial evidence, that Mr. Coates showed the bill(s) of lading to Associated Products's [sic] employees on at least one occasion. There is some small discrepancy among various witnesses for both parties as to the number of times the bills of lading were shown and to which individuals, but it is not a significant enough variation to have any bearing on the outcome of this case.

With regard to Naturex, Brian Kozera, a former employee of Associated Products, testified for Plaintiffs that Mark Funderlich removed a packing list from an Air–Scent shipment and a quart bottle from one of the shipments.

Trial Court Opinion, Penkower, J., 6/30/04, at 1–3.

¶ 3 On November 20, 1997, appellees filed a complaint and motion for special and/or preliminary injunction against appellants API, Harlan Simons III, Mark Funderlich, Ralph Jackson Simons, Watkins Motor Lines and its driver, William Coates. Record, No. 1. The complaint asserted claims for: (1) misappropriation of trade secrets and confidential information; (2) trespass to personal property; (3) conversion; (4) negligence; and (5) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1964. *Id.* The action subsequently was removed to the United States District Court for the Western District of Pennsylvania, and following a hearing, appellees' request for a preliminary injunction was granted. The District Court then dismissed appellees' RICO claim, and remanded the case to the Court of Common Pleas.

¶ 4 A non-jury trial was held between February 13, 2001 and March 7, 2001, at which time non-suit was granted as to all claims against Ralph Jackson Simons. Record, Nos. 80–87. On June 7, 2001, the court entered a verdict in favor of appellees, awarding $1.00 compensatory damages against API, Simons, Funderlich, and Coates, and $25,000 punitive damages against API only. Record, No. 93. Additionally, the court granted injunctive relief against API, Simons, and Funderlich in a form to be determined later. *Id.* Thereafter, on June 18, 2001, appellants filed a motion for post trial relief. Record, No. 95. On December 13, 2001, the court issued a permanent injunction, which provided:

1. Insofar as the Defendants, Associated Products, Inc., Harlan Simons III and Mark Funderlich, learn, realize, or otherwise acquire information that they are in possession of any of the items listed in the preliminary injunction issued by the Honorable Donetta W. Ambrose on February 12, 1998 in Civil Action 97–02137, U.S. District Court for the Western District of Pennsylvania, the Defendants shall immediately return those items to the Plaintiffs.

2. The Defendants, Associated Products, Inc., Harlan Simons III and Mark Funderlich, are now and forever enjoined from future trespass upon and/or misappropriation of the Plaintiffs' bills of lading, packing documents, invoices, other shipping documents and shipped product. Said Defendants are further enjoined from improperly accessing said items, including the packaging and labeling thereof, for the purpose of obtaining information concerning the Plaintiffs' products, shipments or customers.

Permanent Injunction, 12/13/01, at 1; Record, No. 98.

¶ 5 On June 27, 2002, the court issued a one-paragraph Adjudication which provided further clarification for its June 7, 2001 and December 14, 2001 Orders.

Defendant Associated Products, Inc., through its employees defendants Harlan Simons III and Mark Funderlich, on repeated occasions committed trespass upon chattels of, and improperly acquired confidential business information and/or trade secrets belonging to, Plaintiff Pestco, Inc., a major competitor of Associated Products, Inc. Plaintiff does not have an adequate remedy at law, inasmuch as the qualification of economic damages is problematic. The proven conduct of the defendants and the risk of that conduct being repeated warrant the granting of injunctive relief.

Adjudication, 6/27/02, at 1; Record, No. 101.

¶ 6 Thereafter, on December 23, 2002, the court denied appellants' motion for post-trial relief and issued the following ruling and clarification:

1. The non-jury verdict entered on June 7, 2001 is clarified and amended to read, in part, as follows:

*Compensatory Damages*

With respect to Count II, Misappropriation of Trade Secrets and Confidential Information, *and* Count III, Trespass to Personal Property; for Plaintiff Pestco, Inc. *only,* and against Defendants Associated Products, Inc., Harlan Simons III, Mark Funderlich and William Coates, in the amount of one ($1.00) dollar.

*Punitive Damages*

For Plaintiff Pestco, Inc. *only* and against Defendant Associated Products, Inc. *only,* in the amount of twenty-five thousand ($25,000.00) dollars.

2. The Permanent Injunction entered on December 13, 2001 is corrected and amended as follows:

   a. The reference to the federal court proceedings in paragraph 1 shall read "Civil Action 97–02317."

   b. The reference to Plaintiff in sentence 1 of paragraph 2 shall mean Plaintiff Pestco, Inc. *only.*

   c. The second sentence of paragraph 2 is deleted.

3. In all other respects the Motion is denied.

Trial Court Order, 12/23/02, at 1–2; Record, No. 118. Judgment was entered and this timely appeal followed. Record, No. 121.

¶ 7 Appellants raise six issues for our review:

1. Did Pestco establish the tort of misappropriation of trade secrets with respect to certain information on a bill of lading used to ship its goods in commerce?

2. Did the Chancellor err in predicating liability based on Restatement (Torts) § 759?

3. Did Pestco establish trespass to chattels based on intangible information on a bill of lading?

4. Can punitive damages be awarded in the absence of any evidence of outrageous conduct and based on the status of the principal parties as business competitors?

5. Was the award of punitive damages in an amount 25,000 times the nominal compensatory damages unreasonable and otherwise impermissibly disproportionate to the amount of damages as to violate Due Process?

6. Did the Chancellor err in granting permanent injunctive relief?

Appellants' brief at 3. For the purposes of our review, appellants' claims are addressed in a slightly different order than presented in their brief.

¶ 8 Appellants first argue "Pestco failed to establish the elements of a misappropriation of trade secrets." Appellants' brief at 14. Pennsylvania courts have generally accepted § 757 of the Restatement (2nd) of Torts as the basic outline for our trade secrets law. *Den–Tal–Ez, Inc. v. Siemens Capital Corp.,* 389 Pa.Super. 219, 566 A.2d 1214 (1989). In pertinent part, § 757 provides:

One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him. . . .

Rest.2d Torts § 757, **Liability For Disclosure Or Use Of Another's Trade Secret— General Principle**, (a), (b).

■ ¶ 9 Appellants first argue neither the information listed on Pestco's bill of lading, nor any of the information relating to Naturex constitutes a trade secret. Appellants' brief at 16, 25. After careful review, we agree. Under § 757, a trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Den–Tal–Ez, Inc., supra* at 1228, *quoting* Rest.2d Torts § 757, comment b. As we explained in *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063 (Pa.Super.2003):

> The crucial indicia for determining whether certain information constitutes a trade secret are substantial secrecy and competitive value to the owner. It is not the character of the information that is relevant under Pennsylvania law. Rather, the determination of whether the information is a trade secret must be made on a case-by-case basis.

*Id.* at 1070–1071 (citations and internal quotations omitted).

¶ 10 The United States District Court for the Eastern District of Pennsylvania has set forth a number of factors that are helpful in analyzing whether given information constitutes a trade secret, including:

> (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; [ . . . (5)] the amount of effort or money expended by the owner in developing the information and (6) the ease or difficulty with which the information could

be properly acquired or duplicated by others.

*Prudential Ins. Co. of America v. Stella*, 994 F.Supp. 318, 323 n. 2 (E.D.Pa.1998) (citations omitted). Here, it is undisputed that William Coates showed various Pestco bills of lading to API personnel on five to seven separate occasions over a period of 1 ½ years. Those bills of lading contained the name of the shipper, the name and address of the customer to whom the goods were being shipped, the number of cartons, a generic classification of the goods, and the total weight of the shipment. Additionally, Pestco's domestic shipments contained a material safety data sheet (MSDS) and a packing slip. Pestco's international bills of lading also contained the customer's phone number and the name of a broker, and were often shipped with a customs invoice, certificate of origin, and sometimes an MSDS. N.T., 2/13/01, at 48–53; N.T., 2/15/01, at 131–132, 173–174; N.T., 2/20–22/01, at 36, 78, 312–336; and N.T., 3/6–7/01, at 48.

■ ¶ 11 Under Pennsylvania law, customer lists are generally afforded trade secret status. *See A.M. Skier Agency, Inc. v. Gold*, 747 A.2d 936 (Pa.Super.2000) (trial court did not abuse its discretion in issuing a preliminary injunction for misappropriation of trade secrets where an employee stole a directory listing client names and contact information); *Morgan's Home Equip. Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957) (lists of confidential and valuable customer data constitute trade secrets). Relying on *Morgan's Home*, the trial court concluded that Pestco's bills of lading were analogous to a customer list and the information on them "could be highly valuable and potentially damaging in the hands of a competitor" and "constitute a trade secret." Trial Court Opinion at 8–9. After careful consideration, we cannot reasonably agree.

¶ 12 At trial, Coates testified he did not show appellants any of the other documents sent with the Pestco shipments, only their bills of lading. N.T., 2/20–22/01, at 312. Unlike *Morgan's Home*, the information contained on Pestco's bills of lading was rather general in nature, readily available to API, and easily obtainable from other sources; it was not the type of "data...entitled to protection," as was found by the trial court. *See* Trial Court Opinion at 9, *quoting Morgan's Home Equip. Corp., supra* at 625, 136 A.2d at 843. At the time of the alleged incident, Pestco had approximately 1,500 customers, many of whom were ascertainable from industry-wide mailing lists purchased by both API and Pestco or members of industry trade groups Swisher International and Fikes. N.T., 2/14/01, at 13; N.T., 2/20–22/01, at 435–436. Also, API and Pestco easily can ascertain each other's customers by simply visiting public restrooms or reviewing the names of potential customers in a phone book's yellow pages. N.T., 2/13/01, at 62–63; N.T., 2/20–22/01, at 428–429. Moreover, the bills of lading in question did not contain specific product description or pricing information, and a number of Pestco employees testified that they could not identify what specific products were being shipped by simply looking at the bills of lading. N.T., 2/14–15/01, at 131–132, 144–147, 158–161; N.T., 2/20–22/01, at 99; N.T., 2/26/01, at 194–195, 207, 220–222, 250.

¶ 13 It is well-settled that "[e]quity will not protect mere names and addresses easily ascertainable by observation or reference to directories." *Renee Beauty Salons, Inc. v. Blose–Venable*, 438 Pa.Super. 601, 652 A.2d 1345, 1349 (1995) (citations omitted). "[F]or customer information to be protectible it must be *a particular secret* of the business..." *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 263, 213 A.2d 769, 777 (1965) (emphasis added). While not binding upon this Court, we find the conclusions of the Eastern District Court helpful:

> Customer lists and confidential business information, however, cannot be trade secrets if they are easily or readily obtained, without great difficulty through some independent source other than the trade secret holder and thus courts have denied protection to customer lists which are easily generated from trade journals, ordinary telephone listings, or an employee's general knowledge of who, in an established industry, is a potential customer for a given product.

*Prudential Ins. Co, supra* at 323 n. 2 (citations omitted).

¶ 14 The trial court also relied on the testimony of Brian Kozera, a former API employee, to support its finding that appellants are liable for misappropriation of trade secrets. Trial Court Opinion at 3. Appellants aver the court's "decision to accept Mr. Kozera's testimony was against the weight of the evidence." Appellants' brief at 26. We agree.

¶ 15 "[T]his Court will respect a trial court's findings with regard to the weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *Cummins v. Atlas R.R. Const. Co.*, 814 A.2d 742, 745 (Pa.Super.2002) (citation omitted). Brian Kozera is a former forklift driver for API who admittedly charged personal items on API's business account after quitting. N.T., 2/13/01, at 118–120. At trial, Kozera testified that he witnessed appellant Funderlich remove a bottle from one of Pestco/Air Scent's boxes addressed to Naturex, take it back toward his lab, and later return it. *Id.* at 76–77. Kozera also testified he removed shipping documents from Air Scent's pallet on more

than one occasion at the request of Funderlich. *Id.* at 74–76. This testimony is both inaccurate and contradictory to the other testimony presented at trial. Kozera originally testified he removed Air Scent's pallets from the truck prior to Funderlich's intrusion, but later contradicted himself and said the pallets remained on the truck. *Id.* at 76, 105–109. Kozera further testified that the box from which Funderlich allegedly removed the bottle was folded over. *Id.* at 71–72, 112–114. Pestco employee Michelle Lara, however, testified that boxes were always sealed prior to shipment, and Naturex owner Roy confirmed he didn't recall receiving any boxes that were unsealed or merely folded over. N.T., 2/14–15/01, at 185; Deposition of Jean Roy, 2/3/01, at 22; Record, No. 85. Furthermore, Funderlich denied that any such wrongdoing occurred. N.T., 2/20–22/01, at 385–388. Based on the foregoing, we therefore find no basis for the trial court's conclusion that appellants misappropriated appellees' trade secrets.

■ ¶ 16 Appellants also argue the court erred in concluding that they committed trespass to chattels with respect to Pestco's bills of lading. Appellants' brief at 33. Specifically, appellants claim "the tort of trespass to chattels cannot be predicated on the intangible information contained in a bill of lading." *Id.* We agree.

¶ 17 The tort of trespass to chattels, to the extent it still exists in Pennsylvania, is governed by Restatement (2nd) of Torts § 217, **Ways Of Committing Trespass To Chattel**, which provides:

> A trespass to a chattel may be committed by intentionally
>
> (a) dispossessing another of the chattel, or
>
> (b) using or intermeddling with a chattel in the possession of another.

*Id.* Pennsylvania courts have long-recognized that the tort of trespass to chattel must be based upon some tangible form of property. *See Mackay v. Benjamin Franklin R. & H. Co.*, 288 Pa. 207, 135 A. 613, 614 (1927). In *Northcraft v. Edward C. Michener Associates, Inc.*, 319 Pa.Super. 432, 466 A.2d 620 (1983), we concluded:

> A tort based on interference with an individual's property right in a chattel, regardless of the nature of the chattel, presupposes the existence of that chattel. The action must therefore be limited to chattels of an existing nature; *i.e.* those whose existence is ascertainable by some concrete proof.

*Id.* at 628.

¶ 18 Here, the property in question was primarily intangible information contained on Pestco's bills of lading, namely the identity of the customer and a general classification of the goods being shipped. The trial court concluded that in the absence of "any authority that states, as a matter of law, that documents or information found on documents, can never be the subject of an action for trespass to chattels," liability for trespass to chattels with respect to Pestco's bills of lading must stand. Trial Court Opinion at 12–13. In light of our holdings in *Mackay* and *Northcraft*, we wholly reject the court's conclusions.

■ ¶ 19 Having found appellants not liable under §§ 757 and 217, we nonetheless agree with the court that Restatement of Torts § 759, **Procuring Information By Improper Means**, provides appellees with an alternative theory of recovery. Trial Court Opinion at 11–12. Accordingly, we reject appellants' claim of trial court error. *See* Appellants' brief at 31. In relevant part, § 759 provides:

> One who, for the purpose of advancing a rival business interest, procures by improper means information about anoth-

er's business is liable to the other for the harm caused by his possession, disclosure or use of the information.

*Id.* Moreover, the comments to § 759 clearly indicate "information that is procured under this section need not rise to the level of a trade secret. It only need be confidential business information." *Den–Tal–Ez, Inc., supra* at 1231, *citing* Rest.2d Torts § 759, comment b. It is undisputed that William Coates improperly showed appellants bills of lading belonging to Pestco, their primary competitor. At trial, a number of API employees testified as to the confidential nature of information contained on a bill of lading. *See* N.T., 2/13/01, at 13, 36, 146–147, 154, 163; N.T., 2/15/01, at 83. Specifically, Ralph Simons admitted he considers information on a bill of lading confidential, and would object to someone turning over information from API's bills of lading to a competitor. N.T., 2/13/01, at 36. Similarly, Mark Funderlich admitted that client identity is "confidential information" and that he would never give a competitor such information. *Id.* at 13. Accordingly, the imposition of liability under § 759 was appropriate. *See Den–Tal–Ez, supra.*

¶ 20 Appellants next contend their conduct was not of such an outrageous nature to justify the imposition of punitive damages against API. Appellants' brief at 38. We agree.

■■■ ¶ 21 Our standard of review in assessing an award of punitive damages is well-settled.

[P]unitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

*Slappo v. J's Development Associates, Inc.,* 791 A.2d 409, 417 (Pa.Super.2002) (citations omitted). "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused. Likewise, in equity matters, our standard of review . . . is limited to a determination of whether the Chancellor committed an error of law or abused his discretion." *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 495–496, 587 A.2d 702, 705 (1991) (citation omitted).

■■■ ¶ 22 Here, the trial court awarded appellees $25,000 in punitive damages, in part, on the basis appellants misappropriated appellee's trade secrets in violation of § 757 of the Restatement of (2nd) of Torts. *See* Trial Court Opinion at 16. This Court having concluded the information contained on Pestco's bills of ladings *did not* constitute a trade secret, we find the court's imposition of punitive damages inappropriate. Moreover, we agree with appellants the $25,000 punitive damages award "was impermissibly disproportionate" to the $1.00 compensatory damage award, "not reasonably related to the nature of the conduct and violative of due process." Appellants' brief at 44, relying on *State Farm v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

¶ 23 In *State Farm,* the United States Supreme Court was faced with determining whether a $145 million punitive damages award was excessive and disproportionate to the wrong committed. Noting that punitive damages are aimed at deterrence and retribution, the Court nonetheless found the award constituted an unconstitutional deprivation of the insurer's property, and further cautioned that there are procedural and substantive constitutional limitations on punitive damage

awards and that the due process clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments. *Id.* at 416–418, 123 S.Ct. at 1519–21, 155 L.Ed.2d. at 599–600.

¶ 24 This Court recently analyzed *State Farm* in *Hollock v. Erie Ins. Exchange,* 842 A.2d 409, 420 (Pa.Super.2004) (*en banc* ), and cited *State Farm* for the proposition that "although states possess discretion over the imposition of punitive damages, there are procedural and substantive constitutional limitations on these awards." *Id.* Further, we noted that under Pennsylvania law the "size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." *Id.* at 419 (citation omitted). The *Hollock* court reiterated three guideposts an appellate court should consider in determining whether an award of punitive damages violates due process:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Id.* at 420, *citing State Farm, supra* at 418, 123 S.Ct. at 1520, 155 L.Ed.2d. at 601.

¶ 25 In this case the trial court awarded appellees punitive damages in an amount 25,000 times the compensatory damage award of $1.00. *See* Trial Court Order, 12/23/02, at 1–2; Record, No. 118. In reviewing such an award, we are mindful of the fact "the United States Supreme Court has expressly rejected the assertion that a punitive damages award must bear a certain proportionality to the amount of compensatory damages." *Hollock, supra* at 421 (citation omitted). Nonetheless, where "an amount of an award of punitive damages... shock's the Court's sense of conscience," the award cannot stand. *Reading Radio, Inc. v. Fink,* 833 A.2d 199, 214 (Pa.Super.2003). Given the gross disparity between the nature of the harm suffered by appellees and the punitive damages awarded, we find this award does shock our conscience. Accordingly, we are obliged to vacate the $25,000 judgment for punitive damages.

¶ 26 Lastly, appellants argue that "a permanent injunction was not warranted." Appellants' brief at 46. Our standard of review in addressing whether a trial court erred in granting a permanent injunction is well-settled.

> [I]n order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law. Additionally, when reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law.

*Buffalo Township v. Jones,* 571 Pa. 637, 644, 813 A.2d 659, 663–664 (2002) (citations and internal quotations omitted). Injunctive relief is warranted in cases where the harm is "not subject to exact valuation and compensation through damage awards." *Den–Tal–Ez, Inc., supra* at 1233. Additionally, where a defendant improperly obtains a plaintiff's confidential information, as is the case here, the court is justified in granting an injunction to prevent future use of the information and to deter repeti-

tion of the conduct. *Id.;* Rest.2d Torts § 757. We reiterate the well-reasoned conclusions of the trial court:

Both parties are fierce competitors and are involved in producing the same products. Both parties use or have used the same trucking company and the same truck driver to ship their products. The truck driver has been implicated and has admitted to some involvement in the revealing of the information on the bills of lading to Defendants. Compensatory damages only in the amount of $1.00 have been awarded by the court because of the speculative, non-provable nature of any resulting damages. However, given past history, current litigation, and the competitive nature of the business, the Court is mindful of the possibility of future violation. Furthermore, no adequate remedy at law exists due to the speculative nature of damages.

Trial Court Opinion at 14–15. Accordingly, we reject appellants' claim of trial court error in this regard and conclude that permanent injunctive relief is appropriate.

¶ 27 For the foregoing reasons, we affirm the judgment for compensatory damages in the amount of $1.00, vacate the judgment of punitive damages in the amount of $25,000 and affirm the permanent injunction.

¶ 28 Judgment affirmed in part and vacated in part.

¶ 29 Jurisdiction relinquished.