J-A20036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE ESTATE OF STEPHEN D. KANYA, JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| INSECTARIUM AND BUTTERFLY PAVILLION, INC. | : | No. 1811 EDA 2021 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered August 6, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190800986

BEFORE:  STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED SEPTEMBER 08, 2022**

Insectarium and Butterfly Pavilion, Inc. d/b/a The Philadelphia Insectarium and Butterfly Pavilion (IBP) appeals from the judgment entered in the Court of Common Pleas of Philadelphia County (trial court) in favor of The Estate of Stephen D. Kanya, Jr. (the Estate) against IBP in the amount of $11,000.  The court had entered an Order making permanent a preliminary injunction directing IBP to remove its personal property from real property owned by the Estate and enjoining it from further entry.  IBP challenges the trial court's issuance of the preliminary injunction on a number of bases, the

_____

[*] Retired Senior Judge assigned to the Superior Court.

trial court's award of damages to the Estate, and several of the court's evidentiary rulings at the bench trial. We affirm.

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. Stephen D. Kanya, Jr. (the Decedent) purchased the subject property, located at 8042-8044 Frankford Avenue in Philadelphia (the Property) in July 1994. When the Decedent passed away in 2006, the Property went into the Estate and it is the record title holder.[1] The Property is vacant land and IBP is located on an adjacent parcel. IBP entered on the Property, without permission, and has used it as a parking lot for its employees, visitors and customers, as well as leaving tires, garbage and a disabled truck thereon.

The Estate sent a cease and desist letter to IBP in December 2017 asserting that its use of the Property constituted a criminal trespass and demanded that it no longer use the Property in any capacity. In 2019, IBP

---

[1] At the time of his death, the Decedent was domiciled in Cape May County, New Jersey, and his will was admitted to probate in Cape May with letters testamentary issued to his son, Stephen M. Kanya (Mr. Kanya). However, the Decedent was survived by four other children, and in 2015, the beneficiaries of the Estate filed a successful complaint to remove Mr. Kanya as executor due to his improper conduct and failure to fulfill his duties in administering the Estate. Although Mr. Kanya and the Estate initially reached an agreement for him to purchase the Property by paying a monthly sum over a five-year period, the Property remained within the Estate because Mr. Kanya did not make the payments. (**See** N.T. Trial, 6/28/21, at 33).

created a Facebook event page inviting guests to a July 25 "Monarch Beer Garden" on the Property. The Estate sent a second cease and desist letter upon learning of the event to IBP in advance of its occurrence. IBP held the beer garden in disregard of the letter and continued to host similar activities.

The Estate initiated this action in August 2019 by filing a complaint against IBP for trespass. It also filed a petition for preliminary injunction seeking an order requiring: "(1) Defendants, their employees, visitors and/or customers to cease entering upon the Property, (2) Defendants to cease permitting automobiles to be parked on the Property, and (3) Defendants to remove all items and fixtures that they placed on the Property." (Petition for Preliminary Injunction, 8/09/19, at 8). After holding a hearing on September 18, 2019, the trial court granted the preliminary injunction that same day. However, the order did not list the specific obligations of IBP or include bond requirement for the Estate.[2] When Counsel for IBP contacted the Estate and suggested that the order was invalid because of the bond omission, on September 23, 2019, the Estate filed an emergency motion to modify the trial court's September 18, 2019 order, which the court granted that same day without holding an additional hearing. The trial court amended its order to

_____

[2] *See* Pa.R.C.P. 1531(b)(1) (providing that a preliminary injunction may be granted only if a plaintiff files bond in an amount fixed by the court in order to compensate any person sustaining damages by reason of granting injunction in event injunction is later dissolved).

include language tracking the relief the Estate requested in the petition for preliminary injunction directing IBP to remove their personal property from the Property and to cease any further trespass. The trial court stated that IBP is "forbidden from trespassing on the [Property]" and its "obligations with respect to the Property are as follows: (1) Defendants, their employees, visitors and/or customers are required to cease entering upon the Property, (2) Defendants are required to cease permitting automobiles to be parked on the Property, and (3) Defendants are required to remove all items and fixtures that they placed on the Property." (Order, 9/23/19). The modified order also included a nominal bond requirement in the amount of $1.00. The trial court explained that it amended the order five days after its entry (well within the prescribed 30-day statutory timeframe) to include language expressly listing IBP's obligations and to correct the clerical error regarding the nominal bond. (**See** Trial Court Opinion, 3/30/22, at 9); **see also** 42 Pa.C.S. § 5505.

## B.

The trial court held a bench trial on the trespass action on June 28, 2021, via Zoom videoconference due to the Covid-19 pandemic. One of the Decedent's children, Justine Zaccardi, testified that she has been an executrix to the Estate along with two other beneficiaries since January 2016. Ms. Zaccardi explained that the recorded deed to the Property is dated July 18, 1994, and lists only the Decedent as the grantee. (**See** N.T. Trial, at 17). Likewise, the Philadelphia Real Estate Transfer Tax Certification identifies only

the Decedent as the grantee, and the recorded mortgage satisfaction for the Property lists only the Decedent as the mortgager. (***See id.*** at 18-19). Counsel for IBP stipulated that all recorded documents related to the Property since 1994 identify only the Decedent as the record owner and make no reference to his son, Mr. Kanya. (***See id.*** at 20-21).

Ms. Zaccardi testified that she became aware of IBP's use of the Property in June 2016 and "it was being completely turned upside down. There were dumpsters on there, they ripped up all the lawn, they took out trees." (***Id.*** at 37). Ms. Zaccardi was shown a Google aerial image of the Property depicting IBP using it as a parking lot, with vehicles and its cherry picker parked on it and "hundreds of . . . potted plants made from tires that were painted and placed on the Property." (***Id.*** at 46). Ms. Zaccardi identified for the record advertisements IBP posted on social media during the summer of 2019 lauding the turnout at its prior beer party and promoting its "August beer garden, we will have shopping, entertainment, games, beer and food again. . . . We will also be making cocktails [] and adding another beer to our menu." (***Id.*** at 52). Ms. Zaccardi advised that the Estate has no insurance policy or licensing agreement to host parties on the Property, and she noted that the events went forward despite the cease and desist letters.

Ms. Zaccardi further testified that there has been "a lot of vandalism on the Property including taking down the fences. I've had the fence welded shut and it was broken open. I've had locks cut numerous times on the Property."

(*Id.* at 58). The City of Philadelphia finally removed IBP's cherry picker from the Property in July 2020 after IBP ignored the Estate's repeated requests that it remove the truck because of vandalism in the area around it. (*See id.* at 59). Ms. Zaccardi averred that the lot "has just become a dump site" for IBP trash and she observed garbage, debris and tires accumulating next to and on the Property after the preliminary injunction was issued. (*Id.* at 61; *see id.* at 63-64).

As to damages, Ms. Zaccardi testified that the Estate incurred several expenses to address trespassing on the Property totaling approximately $10,000, including: installing three security cameras with an associated $75.00 monthly SIM card fee; installation of gates, fences and fencing repairs; front gate work to weld gate shut and then repair work after it was cut and welded open; numerous lock repairs; herbicide and plant removal; and property survey to mark exact boundary lines. (*See id.* at 74-75).

At several points during trial, counsel for IBP objected to the admission of Estate exhibits, asserting that he had "been trying to follow these documents and [. . . what] has been sent to me is a mess." (*Id.* at 34; *see also id.* at 30). The trial court overruled the objections, explaining that "what is being brought up on the screen is what I received . . . This is what they filed with the Court. (*Id.* at 34-35; *see id.* at 49). The trial court also explained that court staff was controlling the documents displayed on the screen in accordance with the parties' submissions.

Counsel for IBP then sought to introduce a series of documents relating to other real estate transactions processed by the Decedent, including an August 2001 mortgage satisfaction transaction, unrecorded deeds concerning other properties, and real estate transactions made by Decedent's son, Mr. Kanya. Counsel for the Estate objected to the admission of these documents on the basis of relevance to the instant trespass action, and the trial court sustained the objection. (*See id.* at 129-137).

On July 7, 2021, the trial court entered its verdict in favor of the Estate against IBP and awarded $10,000 in economic damages and $1,000 in punitive damages. The trial court also entered the September 23, 2019 preliminary injunction as a permanent injunction. IBP filed a post-trial motion which the trial court denied on August 6, 2021, and entered judgment on the verdict. IBP timely appealed and it and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).[3]

## II.

We begin by noting that "[a] permanent injunction is a permanent order requiring an individual or entity to comply with mandatory conditions imposed

---

[3] Because the grant or denial of a permanent injunction is a question of law, our standard of review is *de novo*, and our scope of review is plenary. *See Thomas A. Robinson Family Ltd. P'ship v. Bioni*, 178 A.3d 839, 843 (Pa. Super. 2017). "As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence." *Id.* (citation omitted).

by the court." ***Oberholzer v. Galapo***, 274 A.3d 738, 746 (Pa. Super. 2022) (citation omitted). "A permanent injunction may be granted only where: 1) the party seeking the injunction has established that its right to relief is clear; 2) an injunction is necessary to avoid an injury where there no adequate remedy at law, *i.e.*, damages will not compensate for the injury; and 3) a greater injury will result from refusing rather than granting injunctive relief." ***Id.*** (citation omitted).

**A.**

IBP first challenges the preliminary injunction on multiple, primarily procedural grounds. (***See*** IBP Brief, at 20-27).[4] IBP contends that the method by which the Estate sought modification of the initial preliminary injunction, by emergency petition without advance notice to IBP, was inappropriate given that there were no emergency circumstances warranting this action. (***See id.*** at 23). The trial court did not hold a hearing on the emergency petition, thereby depriving IBP of an opportunity to be heard in violation of applicable procedural rules, rendering the modification invalid.[5] (***See id.*** at 23-25, 27). IBP also contests the substantive content of the

---

[4] We address IBP's issues concerning the preliminary injunction (listed as issues A-C of its argument) together for ease of disposition and overlap of its arguments in its brief.

[5] ***See*** Pa.R.C.P. 1531(d) (setting forth procedure applicable when preliminary injunction is granted without notice to defendant); Phila.L.R.C.P. 208.3(a)(1) (governing procedure for deciding emergency motions).

September 23, 2019 preliminary injunction, arguing that its terms are "internally inconsistent and ambiguous" because it prohibited IBP from entering the Property while simultaneously ordering it to remove items from the lot. (*Id.* at 25).

However, IBP's claims concerning the process by which the preliminary injunction was entered and modified are now moot. It is well-settled that "the issuance of a permanent injunction supersedes a preliminary injunction." ***PA Energy Vision, LLC v. S. Avis Realty, Inc.***, 120 A.3d 1008, 1012 (Pa. Super. 2015), *appeal denied*, 138 A.3d 6 (Pa. 2016) (citation omitted). "Where a preliminary injunction is in force, the issuance of a permanent injunction terminates the preliminary injunction." ***Id.*** (citation omitted) (determining that because trial court "rendered a decision on the merits and issued a permanent injunction[, a]ny issues regarding the granting of a preliminary injunction cannot now be considered in this appeal.").

Here, the trial court's issuance of the final, permanent injunction **after a bench trial** superseded the preliminary injunction. Hence, issues contesting the validity of the process by which the preliminary order was entered are now moot.

Moreover, IBP's claim that it lacked notice and an opportunity to be heard concerning the preliminary injunction/emergency petition wholly overlooks the fact that the modified order simply corrected a clerical error as to the bond requirement and clarified IBP's obligations under the injunction

the court had entered just five days earlier, **after a hearing**, at which IBP fully participated. The modified order memorialized the exact relief requested in the Estate's initial petition for preliminary injunction, which the court had granted using general language in the initial order. The Estate only sought clarification after IBP signaled that the injunction was unenforceable.

Finally, regarding IBP's challenge to the actual language of the preliminary injunction, which is now operative via the permanent injunction, we recognize that IBP views the order as "internally inconsistent" because it enjoins IBP from entering the Property, while simultaneously requiring it to remove chattel from the lot. However, we agree with the trial court that this is an "illusory excuse," as IBP "was palpably aware that they were able to enter the premises to remove their items because the court Order plainly stated that they were required to do so, giving them the privilege to enter under those circumstances; thus they would not be trespassing." (Trial Ct. Op., at 12).

**B.**

IBP next claims it was prejudiced by the Estate's failure to timely provide it with trial exhibits thereby depriving counsel of the ability to meaningfully review them, and by the trial court's admission of the documents/video footage into evidence over objection. (*See* IBP Brief, at 27-32). IBP contends that although the Estate filed documents in January 2021, then in April of 2021 in advance of a settlement conference, and again in June 2021 just prior

to the start of trial, there was "a perceived difference between the exhibits that [the Estate] indicated [it] would present and the exhibits displayed by the Court" during the virtual bench trial. (*Id.* at 29).

"Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law." *Carlini v. Glenn O. Hawbaker*, *Inc.,* 219 A.3d 629, 639 (Pa. Super. 2019) (citation omitted). "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining." *Id.* (citation omitted).

In this case, the trial court overruled counsel's objections to the Estate's exhibits and admitted them into evidence, reasoning:

> Appellants were provided with all evidence prior to the start of trial via a link from the Court. Appellant did not properly access the link provided to him which led to his exhibits being out of order. Appellant Counsel objected several times throughout the bench trial, stating that he did not receive the correct exhibits and that the exhibits being displayed on the screen were not what he possessed, to which the Court responded, "I am looking at an April 14, 2001 pretrial settlement conference from Archer and Greiner and it's identical to what I am looking at on the screen." *See* N.T. Bench Trial, 6/28/21, at 50. Further highlighting that the exhibits were properly and timely provided months before the beginning of the bench trial and appellant counsel's true issue, of which he is abundantly aware, was that he had accessed the wrong link. This was not due to an untimely submission by Appellees, but rather counsel's apparent lack of preparation and relying on a separate link that was sent previously by Appellee's counsel. Both parties were properly instructed to use the Court provided link to view exhibits. . . .

The trial court allowed Appellee's counsel to display photographs and play video footage that was in evidence and provided to Appellant, via the court's link before the start of trial in the pre-settlement motion dated April 14, 2021. The video footage was relevant, as it showed the Appellants trespassing onto the lot via security camera footage.

(Trial Ct. Op., at 23-24).

The record supports the trial court's assessment and reflects that although counsel for IBP was repeatedly directed to focus on the documents displayed by the court in accordance with the filings of the Estate in order to keep the virtual proceeding moving forward, counsel appeared fixated on noting perceived discrepancies between the items he downloaded in his office and the trial exhibits. We discern no abuse of discretion in the trial court's admission of the Estate's exhibits into evidence and IBP's claim that it was prejudiced in this regard merits no relief.

**C.**

IBP next contends the trial court's award of damages to the Estate was not supported by sufficient evidence and the Estate failed to meet its burden of establishing the legitimacy of its claimed expenses. (*See* IBP Brief, at 32-33). IBP further maintains the amount of the $11,000 judgment was excessive, given that IBP had no ability to "keep all members of the public off [the Property]" and the "alleged trespassing as displayed by the videos is in the vast majority of instances trespassing by entities other than Defendant or agents of Defendant." (*Id.* at 35-36).

Generally, the appropriate measure of compensatory damages for injury to land where repairs are necessary is the associated costs borne by the plaintiff. *See Slappo v. J's Dev. Associates, Inc.*, 791 A.2d 409, 415 (Pa. Super. 2002). The plaintiff has a duty to present sufficient evidence from which the factfinder can compute the proper amount of damages with reasonable certainty. *See id.* With regard to punitive damages, an award is appropriate "only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others." *Pestco*, *Inc. v. Associated Products, Inc.*, 880 A.2d 700, 709 (Pa. Super. 2005) (citation omitted). "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused." *Id.* (citation omitted).

As detailed above, the Estate presented the testimony of Ms. Zaccardi regarding IBP's long term persistent trespass on the Property and the costs expended by the Estate to remedy damage caused by trespassing and vandalism, as well as security measures taken in an effort to end the trespassing. The trial court found:

> Appellant continuously and admittedly trespassed, used the lot for events and left behind machinery and chattel after being ordered to clear the lot. Further, Appellant admits that the reason it did not remove their chattel and machinery from the lot was due to the cost of doing so. These costs were then paid for by Appellee to have the items removed from the lot. . . .

- 13 -

Additionally, Appellant openly acted with a reckless indifference to the property right of Appellee. After repeated notice, Appellants continuously trespassed and deemed their use of the property to be better than that of the true owner. Appellants stated their plan to ignore the trial court's preliminary injunction and further continued to host events and keep their property on the land in complete disregard for the fact they were trespassing.

Accordingly, the trial court did not abuse its discretion when awarding damages for trespass [and] awarded compensatory damages in the amount that Appellee incurred costs to remove the abandoned property of Appellants, as well as punitive damages that correctly correspond with Appellants unacceptable disregard for the rights of others.

(Trial Ct. Op., at 14-15).

Based on the foregoing, we conclude that the trial court had sufficient and appropriate information to rule on the award of damages, and further find that the $11,000 judgment was warranted under the circumstances of this case. The record reflects that IBP not only trespassed on the Property, but that it also hosted and promoted on social media events open to the public thereon, despite the Estate's cease and desist letters and lack of liability insurance for events, in addition to the actual out-of-pocket expenses incurred by the Estate to repair damage to fencing, gates and other items installed in an effort to curb trespassing and vandalism. IBP's challenge to the award of damages and the amount of the judgment merits no relief.

**D.**

Finally, IBP contends the trial court erred in ruling that several of its proffered exhibits were inadmissible at trial. (**See** IBP Brief, at 40-47). IBP

attempted to admit documents relating to the real estate dealings of the Decedent and his son Mr. Kanya in order to dispute the Estate's ownership of the Property. IBP also relies on the "Bayes Theorem, a statistical tool recognized by mathematicians" to show that Mr. Kanya provided the funds to purchase 8042 Frankford Avenue, and the Property is, therefore, not an asset of the Estate. (**Id.** at 45; **see id.** at 40).[6]

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption about the existence of a material fact." **A.Y. v. Janssen Pharm., Inc.**, 224 A.3d 1, 21 (Pa. Super. 2019); **see also** Pa.R.E. 401. "Evidence that is not relevant is not admissible." Pa.R.E. 402.

Here, the trial court explained its ruling excluding IBP's proffered evidence as follows:

> [Documents relating to] the Decedent's other mortgages . . . were not admitted because they were in no way relevant to the present issue occurring at the disputed property.
>
> . . . Appellant sought to introduce documentation on the public record of multiple other real estate transactions that were processed by the decedent that the trial court properly determined had no relevance on the current proceeding and thus were inadmissible . . .
>
> Similarly, . . . defense counsel sought to admit several records involved with the Decedent's and his son's mortgages that were public record. The court did not err in not taking judicial

---

[6] IBP describes the Bayes Theorem as a means of "account[ing] for the effect of each subsequent piece of data on the probability that a given hypothesis is true." (**Id.** at 45-46).

notice because the reason they were not admitted was because they were not relevant to the plot of land in question, nor the issues presented in this case.

\* \* \*

Appellant's attempt to offer Bayes Theorem as a piece of evidence is illogical and unavailing, as it supports no facts, and is a needless elaboration of the burden of proof. Thus, any attempt by Appellant to introduce a mathematical theory to skew the perception of a simple concept, is not relevant.

(Trial Ct. Op., at 16-17, 23).

We agree with the trial court's decision regarding irrelevance of the documents to the instant action and the exclusion of the mathematical theorem from evidence as it would serve only to overcomplicate and confuse the straightforward issue of ownership of the Property by the Estate. Further, despite IBP's repeated emphasis on Mr. Kanya's real estate dealings in this appeal, the parties **stipulated** at trial that the Decedent was the **only** individual listed on **all** of the recorded documents as record owner of the Property since its purchase by Decedent in 1994. The suggestion that a statistical theorem could have aided the trial court as factfinder in assessing the uncomplicated Property ownership issue is unavailing, at best.

In sum, we discern no abuse of discretion or error of law in the trial court's issuance of the permanent injunction or the award of damages in favor of the Estate against IBP. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/8/2022*