**Mary SLAPPO, Appellant,**

v.

**J'S DEVELOPMENT ASSOCIATES, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2001.

Filed Jan. 30, 2002.

Mark J. Homyak, Pittsburgh, for appellant.

Robert W. Lewis, Ambridge, for appellee.

Before DEL SOLE, President Judge, LALLY–GREEN and TAMILIA, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Mary Slappo, appeals from the order entered on November 28, 2000, granting a new trial on compensatory damages only. We affirm.

¶ 2 The trial court aptly summarized the factual and procedural history of the case as follows:

Slappo is the owner of a farm in Economy Borough[.] The Appellee, J's Development Associates, Inc. (J's Development) became the owner of property which adjoins Slappo's farm along its easterly boundary. J's Development undertook to establish a plan of residential building lots on its adjoining property and, for this purpose, retained Shoup Engineering to prepare a plan. Shoup Engineering did the research and field work and prepared a plan of lots which was duly recorded as the Chestnut Ridge Plan of Lots.

After the Chestnut Ridge Plan of Lots was approved and recorded, J's Development began excavation and clearing work in preparation for the construction of homes on the lots and for the construction of a sewage treatment plant to serve the subdivision. The excavation and clearing work as well as the construction of the sewage treatment plant was undertaken in reliance upon the dividing line between the two properties as established by the survey of Shoup Engineering. The line was eventually proven to be wrong. As a result, employees and subcontractors of J's Development had entered a portion of Slappo's land without her permission. Slappo, through a son, protested the trespass but J's Development continued to rely upon the line as established by Shoup's survey. At some point, J's Development agreed to refrain from further work in the area until the dispute[ ] was resolved.

Slappo filed her initial complaint [on January 19, 1993] which contained counts setting out causes of action to quiet title, in ejection and in trespass. Her second amended complaint set out causes of action in ejectment and in trespass. Therein, she complained that J's Development had removed trees, excavated land so as to change the natural contour thereof, installed utility poles and cables, constructed a waste and sewage facility and removed fence posts. In the count in ejectment, Slappo sought an order which, among other things, sought the restoration of possession of the disputed area to her to the exclusion of J's Development, the removal of improvements and damages, including damages for the wrongful taking, costs and attorney fees. In the count in trespass, she sought compensatory and punitive damages.

... At a second pretrial conference, counsel for the parties agreed to bifurcate the trial and try the issue of the correct location of the boundary line first. That issue was assigned to Honorable James E. Rowley, S.J. for trial. After several days of testimony and evidence, J's Development agreed that the boundary line was as contended by Slappo. This agreement was reached after Norman Shoup heard the testimony of Slappo's engineer witness which convinced him that his survey was wrong. Thereafter, a stipulation and order was presented to Judge Rowley which established the correct boundary line.

[After the trial on damages], the jury returned a verdict in favor of Slappo in the amount of $34,276.73 for attorney fees and in the amount of $27,500.00 [for] compensatory damages. We had refused to submit the claim for punitive damages to the jury.

Both J's Development and Slappo filed motions for post-trial relief. J's Development sought a new trial or a remittitur contending that Slappo's evidence as to damages was inadequate and that we erred in admitting evidence as to Slappo's attorney fees and submitting them to the jury to consider in awarding damages. Slappo's motion for post-trial relief sought a new trial, limited to the

issue of compensatory and punitive damages in the event we granted post-trial relief to J's Development. In particular, Slappo complained about several of our rulings relating to proffered evidence on the issue of compensatory damages and complained that we refused to submit the issue of punitive damages to the jury.

Trial Court Opinion, 1/23/01, at 1–3. The trial court granted a new trial as to compensatory damages, and denied the parties' post-trial motions in all other respects. This appeal by Slappo followed. J's Development did not file a cross-appeal.

¶ 3 Appellant raises four issues on appeal:

1. Whether the trial court abused its discretion or erred as a matter of law in granting Appellee's motion seeking a new trial limited to compensatory damages?

2. Whether the trial court erred as a matter of law in not granting Appellant's motion to mold [the] verdict and add delay damages?

3. Whether the trial court erred as a matter of law in refusing to admit evidence in support of Appellant's punitive damages claim and not allowing the jury to consider that issue?

4. Whether the trial court erred as a matter of law or abused its discretion in refusing admission of (a) expert testimony that a portion of the land had been rendered unusable and valueless, and (b) evidence of value of the destroyed trees?

Appellant's Brief at 3.

■ ¶ 4 First, Appellant argues that the trial court erred by granting a new trial limited to compensatory damages only. When deciding to grant or deny a new trial, the trial court must first engage in a two-part analysis: (1) whether a mistake occurred at trial; and (2) whether the mistake was prejudicial to the moving party. *Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1122 (2000).

■ ¶ 5 If the trial court identified a finite number of mistakes in deciding to grant a new trial, this Court's **scope** of review is limited to those particular issues. *Id.* at 1123. After identifying the particular issues to review, this Court will then review the trial court's decision as to the existence of a mistake. Our **standard** of review depends on the nature of the mistake at issue. *Id.* If the mistake involved a discretionary matter, our review is for an abuse of discretion; if the mistake involved a legal error, we review for an error of law. *Id.*

■ ¶ 6 Finally, if this Court agrees with the trial court that a mistake was made, we review the court's decision to grant a new trial as a result of this mistake and review the court's decision for an abuse of discretion. *Id.* at 1122. We observe that an:

abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

*Id.* at 1124.

¶ 7 As noted above, the compensatory damages in this case were divided into two components: $27,500.00 for damage to the land itself, and $34,276.73 in attorneys'

fees. The trial court set forth specific reasons for granting a new trial as to each element of damage. We will address each element in turn.

### Damage to the Land

¶ 8 The parties and the trial court agree that the proper measure of damages for injury to land is as follows. Assuming the land is reparable, the measure of damage is the lesser of: (1) the cost to repair, or (2) the market value of the damaged property (before it suffered the damage, of course). *Kirkbride v. Lisbon Contractors*, 385 Pa.Super. 292, 560 A.2d 809, 812 (1989). If the land is not reparable, the measure of damage is the decline in market value as a result of the harm. *Id.* Generally, the plaintiff has a duty to present sufficient evidence from which a jury can compute the proper amount of damages with reasonable certainty. *King v. Pulaski*, 710 A.2d 1200, 1205 (Pa.Super.1998).

¶ 9 The trial court granted a new trial for compensatory damages to the land because the jury's verdict bore no reasonable relationship to the damages actually proven at trial. In other words, the court ruled that Appellant provided insufficient evidentiary support for the $27,500.00 award. For the reasons set forth below, we see no abuse of discretion in the trial court's ruling, or in its conclusion that a new trial is necessary as a result.

¶ 10 The trial court reasoned that Appellant presented no evidence as to the repair value of items such as removal of fence posts, regrading the land, and removal of the trees. Trial Court Opinion, 1/23/01, at 4–8. According to the trial court, the jury had no evidentiary basis for deciding the overall costs of repair; thus, the jury necessarily had no way to compare the costs of repair with the value of the damaged property. *Id.* Accordingly, the jury had no way to compute damages with reasonable certainty. *Id.*

¶ 11 Appellant admits that she did not provide evidence of the cost to repair these items. On the other hand, she contends that the jury could have used its common sense to conclude that repairing the land was not practical and/or would have exceeded the value of the damaged property. Appellant points to other elements of damage she suffered as a result of the construction on her land: the widening of Cooney Hollow Road; the dumping of effluent from the sewage plant; and the installation of underground utility lines, a 100–foot silt fence, and a chain link fence.

¶ 12 Appellant cites to no evidence in the record to support her claim that repairs would have exceeded the value of the land. Indeed, Appellant cites to no evidence of the cost to repair any of these items. Without any estimate of the cost of repair, the jury had no evidentiary basis for comparing the cost of repair with the value of the land.[1] In other words, the record supports the trial court's conclusion that Appellant failed to present sufficient evidence from which the jury could compute damages with reasonable certainty. As such, we see no abuse of discretion in the trial court's decision to award a new trial as to this element of damages.[2]

---

1. We also note that Appellant's argument presumes that the $27,500.00 award represents the value of the property, rather than the cost of repair. On the other hand, Appellant's own evidence set the value of the property at $35,000.00.

2. Granting a new trial on damages will also allow the court and the jury to address an outstanding problem regarding a transfer of a portion of the land to a third party. While the dispute over the proper boundary line was still pending, J's Development transferred a portion of the disputed area to Economy Borough. J's Development initially denied that

¶ 13 In this section of her brief, Appellant also argues that the trial court's adverse rulings demonstrated bias or prejudice against her. Appellant's Brief at 18–19. We need not address this claim in detail, because Appellant has failed to present a legal argument that any of the court's evidentiary rulings were erroneous. Of course, if the court's rulings were legally correct, no bias or prejudice can be inferred. This undeveloped argument fails.

## Attorney Fees

¶ 14 The trial court contends that a new trial on damages should be granted because the court erred in submitting the issue of attorney fees to the jury. The background to this claim is as follows. During trial, Appellant's counsel submitted an itemized bill totalling $34,276.73 for attorney fees incurred as a result of the litigation. Our review of the bill indicates that all fees and costs were incurred for litigation-related expenses after the initial complaint was filed in January 1993. The trial court allowed the jury to award attorneys fees as compensatory damages, so long as they were incurred as a direct result of the trespass. The jury did award Appellant the full amount of $34,276.73.

¶ 15 The trial court now recognizes that it erred in allowing the jury to award attorney fees as compensatory damages. Specifically, the court stated that it committed a legal error because fees of this type are not awardable as damages. We agree that the court committed a legal

error. Generally, counsel fees are not recoverable by the prevailing party. 42 Pa. C.S.A. § 1726(a)(1); *Gregory v. Harleysville Mut. Ins. Co.*, 374 Pa.Super. 33, 542 A.2d 133, 135 (1988). Thus, the court did err by allowing the jury to award counsel fees as a consequence of the trespass.

¶ 16 Appellant contends that counsel fees were awardable "as part of her punitive damages claim." Appellant's Brief at 20. In essence, Appellant argues that $34,276.73 could be awarded as punitive damages, even assuming that the court erred by awarding that same amount as compensatory damages. As noted above, the trial court did not allow the jury to impose punitive damages. Moreover, for reasons set forth *infra*, we conclude that the court did not abuse its discretion in disallowing punitive damages. Thus, an award of attorney fees on this basis would be impermissible.

¶ 17 Appellant also argues in the alternative that such fees would be awardable under 42 Pa.C.S.A. § 2503(9). Under specific and limited conditions, attorney fees may be recoverable by statute. *Yeager v. Kavic*, 765 A.2d 812, 814 (Pa.Super.2000). Section 2503(9) allows the court to award attorney fees where "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious, or in bad faith." Such an award requires a specific finding of improper conduct. *See, id.* at 815 (award of attorney fees under 42 Pa.C.S.A. § 2503(7) requires a specific finding of improper conduct).[3]

---

any of Appellant's land was transferred to Economy Borough. After oral argument on appeal, however, J's Development submitted a letter to this Court indicating that part of Appellant's land was indeed transferred. At present, it is impossible to determine the degree to which Appellant has been harmed by this transaction. A new trial will provide

Appellant the opportunity to present evidence regarding this element of damage.

3. The primary goal of § 2503(9) is to penalize the filing of frivolous legal actions. *Miller v. Nelson*, 768 A.2d 858 (Pa.Super.2001), *appeal denied*, 566 Pa. 665, 782 A.2d 547 (2001). Of course, J's Development did not institute the instant case. Thus, given the nature of Appel-

¶ 18 The trial court did not find that the conduct of J's Development or its counsel was in any way arbitrary, vexatious, or in bad faith. Thus, counsel fees would not be awardable on this basis. *See, Yeager,* 765 A.2d at 815. Moreover, we note that the jury's award of $32,276.73 was originally awarded to compensate Appellant for **all** counsel fees incurred during the litigation, because all of these fees were presumably incurred as a result of the original trespass. To now award precisely the same amount of attorney fees on the basis of § 2503(9) would imply that all of J's Development conduct during the litigation was arbitrary, vexatious, or in bad faith. We decline to shift the analysis in this way, particularly when the trial court made no finding of any bad faith conduct.[4] Because the record did not support an award of attorney fees, the trial court did not err in vacating this award and remanding for a new trial. Appellant's first claim fails.

¶ 19 Next, Appellant argues that the trial court erred by failing to impose delay damages. Delay damages are awarded, if at all, on a jury verdict. *See,* Pa.R.Civ.P. 238(a). Thus, Appellant's claim is predicated entirely on whether this Court affirms the original verdict imposed by the jury. Otherwise, there is no judgment upon which to grant delay damages. *Id.* Because we affirm the grant of a new trial as to compensatory damages, we conclude that the trial court did not err in failing to impose delay damages. This claim fails.

¶ 20 Next, Appellant argues that the trial court erred by refusing to submit the issue of punitive damages to the jury. It is the role of the trial court to determine whether the plaintiff has presented sufficient evidence from which a jury could reasonably conclude that the defendant acted outrageously. *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1098 (1985). We review the court's decision for an error of law. *See, Smith v. Bell Telephone Co.,* 397 Pa. 134, 153 A.2d 477, 482 (1959).

¶ 21 Punitive damages may not be awarded for ordinary negligence or gross negligence. *Hutchison v. Luddy,* 763 A.2d 826, 837 (Pa.Super.2000); *Takes v. Metropolitan Edison Co.,* 440 Pa.Super. 101, 655 A.2d 138, 146 (1995), *reversed on other grounds,* 548 Pa. 92, 695 A.2d 397 (1997).

> It is well settled that punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct.

*Bannar v. Miller,* 701 A.2d 232, 242 (Pa.Super.1997) (citations omitted), *appeal denied,* 555 Pa. 706, 723 A.2d 1024 (1998).

¶ 22 According to the trial court, Appellant's own evidence established that J's Development did not act with willful, wanton, or reckless disregard of Appellant's rights. We agree.

---

lant's claim, the more appropriate section (if any) arguably would have been 42 Pa.C.S.A. § 2503(7), which allows attorney fees "as a sanction against another participant for dilatory, obdurate, or vexatious conduct during the **pendency** of a matter." (emphasis added).

4. On remand, if Appellant believes that J's Development is acting improperly during the litigation, the better practice would be to file a petition under § 2503 identifying the specific bad faith conduct at issue, and itemizing the specific fees that Appellant incurred as a result of such conduct.

¶ 23 In her case-in-chief, Appellant called two shareholders of J's Development, John "Butch" Kowal and Leo Kaleugher. Kowal testified that he retained Shoup to survey the property. According to the survey, the property included part of "Johnny's Pond," a local pond which Kowal had believed was on Slappo's land. N.T., 3/22–24/2000, at 179–180. When Kowal asked Shoup about this, Shoup responded that the survey line was correct because he had found a monument. *Id.* Later, Kowal saw a survey (the "Sheffler survey") indicating that Shoup's survey line may be incorrect. *Id.* at 192. Shoup told Kowal that the Sheffler survey had flaws of its own, but that they should stay away from the disputed area. *Id.* at 193. Kaleugher testified that at this meeting, Shoup stood by the accuracy of his survey but advised J's Development to stay away from the disputed area. *Id.* at 213. Shoup eventually admitted that his survey was inaccurate and that the Sheffler survey was more accurate, but Shoup contended that the proper line was not quite the one urged by Appellant. *Id.* at 218. During the first phase of the trial, J's Development finally heard testimony which convinced them to stipulate to a particular property line. *Id.* at 217.

¶ 24 The trial court determined that the most direct evidence pertaining to Kowal's and Kaleugher's state of mind indicated that they did not act with reckless indifference to Appellant's rights. We agree. Kowal and Kaleugher testified that they took measures to stay away from the disputed area after learning of a possible mistake. They also relied on the advice of their surveyor. We also note that Shoup's survey was based on a duly recorded, but ultimately erroneous, survey conducted in 1981. *Id.* at 214. The survey which convinced Shoup that his work was incorrect was not recorded. Thus, J's Development held a deed indicating that they owned a particular parcel, but also had growing evidence that the property line on the deed was incorrect. On the other hand, the precise position of the proper line could not be readily determined. Under the circumstances, J's Development acted reasonably to protect its rights while staying away from an area that may belong to Appellant. Because the evidence does not present a jury question as to the issue of recklessness, the trial court properly refused to submit punitive damages to the jury.

■ ¶ 25 Next, Appellant argues that the court erred by precluding Appellant's expert from testifying that a portion of her land was rendered valueless by the installation of the sewage treatment plant. The trial court held that J's Development could not be found liable for damages on this theory, because the plant did not encroach or trespass upon Appellant's land. Trial Court Opinion, 1/23/01, at 11–12 ("the existence of the sewage treatment plant did not constitute a trespass upon Slappo's land and could not be a legal cause of any injury to Slappo. J's Development cannot be obliged to answer for what its trespass did not cause simply because it was a trespasser").

■ ¶ 26 Arguments that are not appropriately developed by citation to authority are waived. *Korn v. Epstein,* 727 A.2d 1130, 1135 (Pa.Super.1999) ("it is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law"). Appellant presents a bare assertion that the trial court erred, without any supporting legal or factual basis for her argument. Appellant's Brief at 29. This undeveloped

claim is waived.[5]

¶ 27 Finally, Appellant argues that the trial court erred by precluding Harry Slappo from testifying as to the value of trees removed from the land. Generally, the measure of damage for removal of standing timber is the diminution in the market value of the land, because such an injury is considered permanent and because the trees generally do not have a selling value apart from the land itself. *See, Richards v. Sun Pipe Line Co.*, 431 Pa.Super. 429, 636 A.2d 1162, 1164–1165 (1994). Under these circumstances, the value of the trees themselves is not the proper measure of damages. *Id.* In rare circumstances (such as where the trees are grown on a nursery farm), the plaintiff may introduce evidence of the value of the trees themselves. *Id.*

¶ 28 Appellant implies that this is a case where the value of the trees is a proper measure of damage because similar trees on the land have been harvested and sold. Appellant sought to present evidence of the trees' value through her son, Harry Slappo. Mr. Slappo testified that he knew the value of the trees through the fact that his mother and other people in the countryside sold similar trees as the ones that were removed. N.T., 3/22–24/01, at 110. The trial court sustained an objection that Mr. Slappo had no personal knowledge of the correct value. *Id.* at 111.

¶ 29 Under Pa.R.E. 602, "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "Firsthand or personal knowledge is a universal requirement of the law of evidence." *Id.* (Official Comment). The party calling the witness has the burden of proving personal knowledge. *Id.* The trial judge's role is to determine whether the plaintiff has presented sufficient evidence from which a jury could determine that the witness has personal knowledge. *Id.*

¶ 30 We see no error of law in the trial court's decision to exclude Mr. Slappo's testimony. At best, his testimony established in that he knew the value of the trees secondhand, through his mother and other people living in the countryside. Appellant presented no evidence that he entered into any such transactions himself or that he had any other firsthand knowledge of the trees' value. As such, the evidence was properly excluded under Pa. R.E. 602.[6] Appellant's final claim fails.

¶ 31 Order affirmed.

---

5. We note that Appellant did not include a nuisance count in her complaint; rather, she asserted causes of action for ejectment and trespass.

6. Appellant argues that Harry Slappo was entitled to give a lay opinion under Pa.R.E. 701. Rule 701, however, does not eliminate the requirement for firsthand, personal knowledge. *See*, Pa.R.E. 608 (Official Comment). Experts are permitted to present opinions based on facts which were not gleaned through firsthand knowledge, but such an exception does not apply to lay witnesses. Pa. R.E. 608, 703.