J-A06011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELISABETTA ROBERTS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LILY DEVELOPMENT, L.P., MANGUAL AND SONS ESCAVATIONS, LLC; LILY CONSTRUCTION | |
| Appellees | No. 216 EDA 2019 |

Appeal from the Judgment Entered January 3, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: March Term, 2016 No. 00651

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 16, 2021**

Appellant, Elisabetta Roberts, appeals from the January 3, 2019 judgment entered following the trial court's order granting judgment notwithstanding the verdict in favor of Appellees, Lily Development, LLC ("Lily Development") and Lily Development Bainbridge South Company ("Bainbridge").[1] We reverse and remand for reinstatement of the verdict on Appellant's negligence claim.

---

[*] Former Justice specially assigned to the Superior Court.

[1] On May 8, 2018, the trial court approved a stipulated order for the substitution of parties. Lily Development, LP, was removed and replaced with Lily Development Bainbridge South Company and Lily Construction, LLC. Mangual Construction LLC was dismissed at an earlier date.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> This property damage and private nuisance case arose from the demolition of an existing structure and the construction of three new townhouses at 734-748 Bainbridge Street in Philadelphia between 2014 and 2017.  [Appellant] owns and lives in the adjacent property at 730-732 Bainbridge Street.  She asserted that her property had been seriously damaged as the result of the negligent demolition and construction activities next door.
>
> [...]
>
> [Appellant] claimed that [Appellees'] demolition and construction activities had damaged the parties' shared party wall and that [Appellees] had not taken the appropriate steps to prevent and/or fix that damage.  She also claimed that the [Appellees] removed a portion of her wall without her consent.  She maintained that [Appellees] had continuously interfered with her use of her property over the four-year construction period by causing debris to fall onto [Appellant's] property, blocking [Appellant's] car in her driveway, causing nails to flatten [Appellant's] car tires, and verbally abusing [Appellant] and her daughter.

Trial Court Opinion, 6/7/19, at 1-2.

Appellant filed her complaint on March 10, 2016 and amended it on June 2, 2017.  Her amended complaint asserted causes of action for negligence, private nuisance, and trespass.  A jury trial began on August 10, 2018 and concluded on August 16, 2018.  The jury entered a verdict in Appellant's favor on negligence and private nuisance, and in Appellee's favor on trespass.  The jury awarded Appellant $550,000.00 for negligence, $2,000.00 for private nuisance, and $350,000.00 in punitive damages for a total of $902,000.00 apportioned evenly between the Appellees.

Appellees filed timely post-trial motions, in response to which the trial court ordered that it would grant a new trial unless Appellant accepted a remittitur of punitive damages to $30,000.00. Appellant accepted the remittitur. Also in response to Appellees' post-trial motions, the trial court granted judgment notwithstanding the verdict ("JNOV") on Appellant's negligence cause of action. The trial court reasoned that Appellant failed to establish that the damage to her property was permanent, and that she failed to produce any evidence of the cost of repair. Judgment was entered on the verdict on January 3, 2019, and this timely appeal followed.

Appellant presents one question:

> Did the trial court err as a matter of law in granting [Appellees'] motions for judgment notwithstanding the verdict on [Appellant's] negligence claim based on [Appellant's] supposed failure to present sufficient evidence as to compensatory damages, where the evidence when viewed in the light most favorable to [Appellant] establishes that the damage to her home was permanent, and plaintiff permissibly testified concerning the changed market value of the property resulting from the damage [Appellees] inflicted?

Appellant's Brief at 8.

The following strictures govern our review:

> We will reverse a trial court's grant or denial of [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and

- 3 -

concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

***Kelly v. Carman Corp.***, 229 A.3d 634, 647 (Pa. Super. 2020).

The record reflects that Appellees purchased and demolished a carpet store that had stood on the corner of Appellant's block, adjacent to Appellant's home. Appellant's expert, Joseph S. Graci, testified that, during the demolition phase, Appellees left a depression at the bottom of the party wall that had separated Appellant's home from the carpet store. The depression was allowing water to pool and seep into Appellant's basement. N.T. Trial, 8/13/18, at 73-75, 162. Graci met with Appellees' personnel at various times throughout the construction, but the issues they discussed went unresolved prior to completion and sale of the neighboring townhome. ***Id.*** at 63. Further, Appellees did not attach the newly constructed townhome to the party wall, leaving the wall unstable, and leaving a gap that would allow moisture to accumulate, causing the wall to deteriorate. ***Id.*** at 132-41. Graci called the gap a "rat chase" that would allow access to small rodents and insects. ***Id.*** Graci said the party wall is deteriorating, no longer properly supported from both sides, and that it will eventually bow, causing structural damage to the homes on both sides. ***Id.*** at 142-45, 173.

Graci said repairs are possible, but not all of them can be completed from Appellant's side of the wall. *Id.* at 170.[2] It would take roughly two months to complete the job and replace all the finished material inside the homes. *Id.* Completion of repairs would require opening the wall of the first floor of the neighbor's townhome, and possibly the second and third floor walls. *Id.* at 155-56. That is, repairs would require removal of the wallboard and insulation so that the repair people could work between the studs. *Id.* Thus, the repairs will be "extremely difficult, extremely expensive" and disruptive to both homes. *Id.* at 164.

Yet, there is no evidence of precisely how expensive the repairs will be. Appellees objected successfully to Graci's testimony as to the cost of the repair, because it was outside the scope of his report. *Id.* at 166-169. Appellant attempted to produce a written repair cost estimate, but the trial court excluded it as hearsay. N.T. Trial, 8/14/18 at 20. Appellant did not produce the person who prepared the report, nor does she challenge any of the trial court's evidentiary rulings. Appellees moved for nonsuit at the close of Appellant's evidence in part on this basis. The trial court denied the motion, summarizing the evidence as follows:

---

[2] Asked how much of the repair work could be done from Appellant's home, Graci said, "Maybe 60/40, 70/30." Appellees construe this as meaning that 60 or 70% of the repairs could be done from Appellant's home. We believe it is unclear from Graci's testimony whether 60 or 70% completion of the necessary repairs could be completed from Appellant's side or her neighbor's side, but the distinction does not affect our disposition of this appeal.

The gist of this testimony is that the only way the house can be – the [Appellant's] house can be put back is by going through the property at 734 Bainbridge. And we don't know if that owner is going to consent if they believe the defense position on this case. They may say no. In which case, the plaintiff's situation is permanent and irreparable. In which case, the standard is the diminution in value of the property. And a property owner is permitted to testify to the value of their own property.

So at this time, I am not inclined to grant the motion for nonsuit or directed verdict.

N.T. Trial, 8/15/18, at 208-09.

Appellant testified to her personal belief of the value of her home—between $475,000.00 and $579,000.00. N.T. Trial, 8/14/18, at 40. She testified that she did not believe her home was salable given the condition of the party wall. *Id.* at 41. The value of the land, according to Appellant, is $172,000.00, and she guessed that maybe she could sell it for $250,000.00. *Id.* Regardless, she would have to disclose all of the damage Appellees allegedly caused, and she believed that her home was unsafe, so she was unsure what she might get from a buyer. *Id.*

In granting Appellees' post-trial JNOV motions, the trial court concluded that Appellant failed to establish that the damage to her land was permanent. "[T]he unanswered question of whether the new next-door neighbors would allow work to be done on their side of the party wall was crucial to whether all of the necessary repairs could be accomplished." Trial Court Opinion, 6/7/19, at 7.

[Appellant[] had the burden of presenting actual evidence as to whether or not the owners of 734 Bainbridge would permit

> repairs to be done from their side of the party wall. Such evidence would be a part of [Appellant's] burden to prove whether damages were permanent or reparable. The absence of such evidence left the jury to guess and speculate as to whether permission was obtainable. The JNOV was proper.

*Id.* at 10.

Thus, the outcome of this appeal depends on whether the trial court abused its discretion or committed an error of law in concluding that the evidence, in the light most favorable to Appellant as verdict winner, did not support a finding that the damage to her home was permanent. "[A] permanent injury [to real estate] is limited to those instances where the damage was caused by a de facto taking or where the injury was unequivocally beyond repair." *Kirkbride v. Lisbon Contractors*, 560 A.2d 809, 812 (Pa. Super. 1989) (*en banc*) (collecting cases). As examples of permanent damage the *Kirkbride* Court cited *Rabe v. Shoenberger*, 62 A. 854 (Pa. 1906) and *Hoffman v. Berwind-White Coal Mining Co.*, 109 A. 234 (Pa. 1920), in which the mining company defendants' failure to support the land surface led to the permanent destruction of natural springs. *Kirkbride*, 560 A.2d at 812. Similarly, in *Schlichtkrull v. M.P. Oil Co.*, 152 A. 829 (Pa. 1930) and *Bumbarger v. Walker*, 164 A.2d 144 (Pa. Super. 1960), the defendants' drilling led to the irremediable infusion of subterranean sulphuric water into the plaintiff's freshwater wells and springs.

Reparable damage occurred in *Lobozzo v. Adam Eidemiller, Inc.*, 263 A.2d 432 (Pa. 1970), wherein the plaintiffs alleged the defendant damaged

their property by detonating explosive charges to prepare a roadbed. The plaintiffs proceeded on a theory that the damage was reparable, and introduced evidence of the cost. The Supreme Court, citing **Rabe**, wrote, "the correct measure of damages is the cost of repair, unless that cost would exceed the value of the building." **Id.** at 437. Because the cost of repair was lower than the value of the property, the **Lobozzo** Court upheld the trial court's decision that the cost of repair was the proper measure of damages. **Id.** In **Kirkbride** the Court concluded that no permanent damage occurred because the defendant, after creating an embankment on the plaintiff's land, had the capacity to restore the land to its previous form. **Kirkbride**, 560 A.2d at 812; s**ee also Frye v. Pennsylvania R.R. Co.**, 144 A.2d 475 (Pa. Super. 1958) (holding that flood damage was reparable and compensable by the cost of repair and lost farm income).

"If the land is not reparable, the measure of damage is the decline in market value as a result of the harm. Generally, the plaintiff has a duty to present sufficient evidence from which a jury can compute the proper amount of damages with reasonable certainty." **Slappo v. J's development Assoc., Inc.**, 791 A.2d 409, 415 (Pa. Super. 2002) (citing **Kink v. Pulaski**, 710 A.2d 1200, 1205 (Pa. Super. 1988)).

The trial court found **Slappo** controlling in this case. In **Slappo**, the plaintiff brought an action against a developer for ejectment and trespass after the developer allegedly damaged some of her farmland by removing trees,

constructing a waste and sewage facility, installing utility poles, removing fence posts, and changing the contour of the land by excavating. *Id.* at 413. The developer relied on a survey that incorrectly identified the boundary between the properties. The jury found in favor of the plaintiff, but the trial court granted a new trial on compensatory damages. *Id.* at 413-14. The trial court reasoned that the plaintiff failed to produce any evidence of the cost to repair her land. *Id.* at 415.[3] This Court affirmed, noting that the plaintiff presented no evidence as to the cost of repairs. *Id.* at 415. The *Slappo* Court rejected the plaintiff's argument that the jury could have used its common sense to determine that repairs were impractical and would have exceeded the value of the damaged property. *Id.* With no estimate of the cost of repair, the trial court reasoned, the jury could not compare the repair cost with the value of the land. *Id.* The plaintiff acknowledged that there was no evidence of repair cost, but argued that the jury could have used its common sense to determine that repairs were impractical or would have exceeded the value of the property. *Id.* This Court affirmed, reasoning that the record contained no evidence from which the jury could compute damages. *Id.*

Instantly, the trial court reasoned that Appellant failed to prove that her neighbor would not permit repairs and, therefore, failed to prove permanent

---

[3] If repairs are possible, the proper measure of damages is the lesser of the cost of repair or the market value of the property. *Slappo*, 791 A.2d at 415.

damage to her home. Here, as in **Slappo**, Appellant argues that the jury could have relied on its common sense:

> Because no neighboring property owner in his or her right mind would freely allow their own home, recently purchased brand-new for nearly $1.5 million, to be destroyed to repair their neighbor's property, neither the law nor common sense required [Appellant] to force her neighbor to appear in court to testify that of course they were not willing to allow their own home to be destroyed to repair the damage [Appellees] had inflicted on [Appellant's] property.

Appellant's Brief at 1-2.

This case is distinct from **Slappo**, however, in that repairs are possible but would require extensive, albeit temporary, damage to an adjacent occupied home. Further, we do not read **Slappo** as prohibiting an appeal to a jury's common sense. Rather, we believe the **Slappo** Court concluded that the evidence in that case was insufficient to facilitate a common sense determination on the question of permanent damage. Instantly, Appellant's evidence established that Appellees damaged the party wall and then effectively sealed in the damage such that repairs, although possible, are extremely unlikely to occur:

> The time to do all that was when that wall was exposed, and if that wall is exposed you can get to it easily. You can put scaffolding up. You can have lifts. All the damage is on the outside. All the damage is on the outside. It's not on the inside of [Appellant's] house. She wasn't excavating or digging on the inside of her house. The damaged bricks and all the damage that occurred in the excavation that occurred was on the [Appellees'] side of the party wall. So the repairs had to be on the [Appellees'] side of the party wall. There's no way [Appellant] can tunnel through her house through the party wall and patch the bricks that I showed you that were melting and all disheveled on the face

of the side of [Appellees'] lot. So the repairs should have been done when that wall was exposed. Now that the wall is enclosed, it's extremely difficult now to get in there and do something to hold that wall back.

I mean it's, you know, it's so much. All I can say is it's very difficult, very expensive at this point to try, because you got to tear somebody's house apart or both houses to do it. You have to take off the wallboard and the insulation and work between the studs. You got so much in the way now, there's no feasible way to actually do it without expending lots of money and making lots of mess in one or both of those houses. The time to do it, and to have had it done, was when that wall was exposed.

N.T. Trial, 8/13/18, at 155-56.

In the end, this case presents a very difficult question. In some respects, the difficulty is attributable to Appellant's deficient presentation of her case. We observe with dismay that there is no evidence that Appellant ever contacted her neighbor. Appellant explains that it would not have been neighborly to drag her neighbor into court:

Not only would the trial court's approach cause [Appellant] to be regarded as the worst neighbor ever, legally compelling her own next door neighbor to appear in court to assert his or her own right to uninterrupted enjoyment of his or her new townhouse, but it is entirely unrealistic to expect that anyone's next door neighbor would allow the interior of his or her new $1.5 million townhouse to be destroyed to enable the person in the next residence to perform repairs to a party wall damaged by the new townhome's builder and seller.

Appellant's Brief at 22. This explanation is not well taken. First, Appellant cites no case law relieving a plaintiff of the burden of proof because of the plaintiff's reluctance to contact and/or subpoena a potentially unwilling witness. Second, one could argue that the neighborly course of action would

have been to inform the neighbor of the looming structural damage to their home. In any event, Appellant could have obviated the issue before us by simply contacting her neighbor and introducing, by whatever means, evidence of the neighbor's response (or lack thereof).[4] The trial court signaled the importance of this issue when it denied Appellees' mid-trial JNOV motions. Yet Appellant never contacted the neighbor or sought permission to introduce evidence of the neighbor's intentions.

Also frustrating to this Court is the failure of Appellant's counsel to introduce into evidence an estimate of the repair costs. Appellant proffered a written estimate, but failed to introduce the amount by other means after Appellees' successful hearsay objection. The trial court did not permit Graci to give his estimate of the repair costs because it was outside the scope of his expert report. If the cost of repair approached or exceeded the amount at which Appellant valued her home (Graci testified repairs would be extremely expensive), the issue of permanent versus reparable damage would have been obviated. *See Lobozzo*, 263 A.2d at 437 (noting that repair costs are recoverable for reparable damage unless they exceed value of the damaged property).

_____

[4] The relief Appellant requested in this case does not appear to implicate the neighbor's rights in any way, and we therefore discern no basis for concluding that the neighbor was an indispensable party. *See Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa. Super. 2015) (noting that a party is indispensable "when his or her rights are so connected with the claims of the litigants that no decree can be made without impacting those rights").

- 12 -

These issues notwithstanding, the standard of review of an order granting JNOV requires us to determine whether the trial court abused its discretion or committed an error of law in granting JNOV in Appellees' favor, even with all reasonable inferences from the evidence drawn in favor of Appellant. In light of this standard, we are constrained to conclude the trial court erred in granting JNOV. Graci testified that he addressed the needed repairs with Appellees' personnel prior to construction of the new townhome. He also testified that repairs to the exposed party wall would have been relatively inexpensive.[5] The jury heard Appellees' evidence about Appellant's several failed attempts at injunctive relief, and they also heard Appellees' evidence that Appellant refused to permit them to make what they believed were the appropriate repairs. The jury was free to assess and weigh all of this evidence as it saw fit. Thus, nothing prevented the jury from finding that Appellees knew of the damage and failed to address it before moving forward with construction of the new townhome.

Furthermore, the record supports a finding that the repairs, while theoretically possible, would have been extraordinarily disruptive to two occupied homes. Graci testified the repair work would last two months, and

_____

[5] Appellees note that Appellant's claims also involved damage to the garden and parapet walls, both of which are reparable post-construction. This does not alter our conclusion, given the evidence that the party wall will continue to bow and cause structural damage to Appellant's home.

it would involve opening the walls of both neighboring homes. Removing wallboard and insulation would deprive both homes of climate control, at the very least. Further complicating matters is the small gap between the townhome and the party wall, which Graci described as a "rat chase" that would allow small rodents, insects, and moisture in between the two homes. In all likelihood, one or both homes would be uninhabitable for some portion of the two-month repair job.[6] Thus, Appellant's evidence permitted the jury to find that Appellees failed to make simple repairs while the party wall was exposed and created an extremely expensive and difficult repair project that would depend on the new owner's willingness to tolerate substantial and prolonged disruption to their enjoyment of the new home. Said another way, even without evidence of the neighbor's intentions, the jury could reasonably find that the needed repairs would never happen and that Appellant's home was unequivocally beyond repair. *Kirkbride*, 560 A.2d at 812. Here, as in *Rabe* and *Hoffman*, the damage has effectively become a part of the property.

_____

[6] We are puzzled by Bainbridge's assertion that "there is absolutely no evidence that there would be any need to touch any interior walls, floors, or ceilings in her neighbors' house." Bainbridge's Brief at 22. Bainbridge offered this argument in disputing Appellant's assertion that the neighbor's home would be uninhabitable during the repair work. As explained in the main text, Graci testified he would need to open up the walls of the town home, remove the insulation, and work between the studs. Bainbridge's characterization of the evidence invites this Court to draw an inference in Appellees' favor, which they are not entitled to as JNOV movants.

Next, we must consider the argument from Bainbridge that JNOV in its favor was appropriate because it was merely the owner of the site and not involved in the construction, and because there is no evidence it was negligent in retaining Appellee Lily Construction to do the work.[7] We may affirm the trial court's ruling on any valid basis. *Plasticert v. Westfield Ins. Co.*, 923 A2d 489, 492 (Pa. Super. 2007). Bainbridge cites *Leonard v. Commonwealth of Pennsylvania*, 771 A.2d 1238, 1242 (Pa. 2001), for the proposition that a general contractor cannot be held liable for a subcontractor where the general does not control the sub's work methods. The *Leonard* Court relied on the express language of the subcontract (*see id.*), which Bainbridge does not provide and which does not appear to be a part of the record in this case. Bainbridge also cites the parties' stipulation (see footnote 1, *infra*) about the identity of the parties, but that stipulation did not address the respective responsibilities of each Appellee during demolition and construction. Bainbridge does not cite any evidence describing the relative responsibilities of each Appellee in this case, and we therefore reject this argument.

Both Appellees argue that Appellant waived the argument she presents on appeal—i.e. that the damage to her home is permanent because repairs would require substantial disruption of the neighboring property. We

---

[7] Bainbridge included this issue in its JNOV motion and offers it as an alternate basis for affirmance. Bainbridge Motion for Post-Trial Relief, 8/24/18, at ¶ 3.

disagree, as the permanency of the damage was the only basis of liability presented to the jury, as per the trial court's jury instruction on damages:

> The plaintiff is entitled to be compensated to the harm done to her property. If you find that the property was a total loss, damages are to be measured by either its market value or its special value to plaintiff, whichever is greater. If the property was not a total loss, damages are to be measured by the difference in the value before and after the harm.

N.T. Trial, 8/16/18, at 104. Further, our decision in this case does not stand for the proposition that damage is always permanent where the needed repairs require temporary damage to a neighboring property. Here, the jury apparently found the property to be a total loss based on ongoing and irreversible structural damage caused by the ongoing deterioration of the party wall. Our analysis in this case is limited to the facts before us.

Finally, we reject Appellees' arguments that she failed to prove a breach of the standard of care. Appellees note that the Philadelphia Office of Licenses and Inspections approved Appellees' project and issued no code violations for anything. Regardless, the jury was entitled to credit Graci's testimony, and Graci identified numerous ways in which he believed Appellees failed to adhere to the applicable standard of care.

For all of the foregoing reasons, we reverse the order granting JNOV in favor of Appellees and remand for reinstatement of the verdict in favor of Appellant on Appellant's negligence claim. In all other respects, we affirm the judgment.

Judgment reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2021